86 P.3d 217 (2004)
STATE of Washington, Appellant,
v.
John C. MAYER, Respondent.
No. 21236-0-III.
Court of Appeals of Washington, Division 3, Panel Ten.
March 18, 2004.
*218 Kevin M. Korsmo, Deputy Pros. Atty., Spokane, for appellant.
Chris A. Bugbee, Spokane, for respondent.
BROWN, C.J.
John C. Mayer pleaded guilty to manufacturing methamphetamine. The trial court declined to impose a mandatory $2,000 drug fine because it reasoned Mr. Mayer's incarceration would render him indigent. The State appeals. We hold the $2,000 drug fine is mandatory, unless suspended or deferred upon a finding the defendant is indigent. Because the trial court believed it had discretion to disregard the drug fine as being included in the mandatory drug clean-up fee also ordered, and because it did not make a proper record showing Mr. Mayer was indigent, we reverse.

FACTS
Mr. Mayer pleaded guilty to manufacturing a controlled substancemethamphetamine. The plea agreement provided the State would recommend the special drug offender sentencing alternative (DOSA) and "[s]tandard costs and fines, including the $3,000 methamphetamine clean-up fee." Clerk's Papers (CP) at 23.
At the plea/sentencing hearing, the trial court went through the various costs to be imposed on Mr. Mayer, such as the $3,000 clean-up fee. The deputy prosecutor interjected, "Your Honor, there is also a $2,000 drug fine that could be imposed under the manufacturing case." Report of Proceedings (RP) at 6. The trial court observed that some prosecutors "say the $3,000 encompasses that and sometimes they say it is in addition to that." RP at 6. The deputy prosecutor contended the drug fine was separate from the clean-up costs.
During the sentencing phase of the hearing, defense counsel pointed out that Mr. Mayer is "very talented." RP at 14.
He works in body shops. He works on cars and apparently he is very well sought after. So as long as he is clean and he stays clean, he has got a way to make a steady income, a good income. He always *219 will, and he has got the family support that it's going to take to get him through this.
RP at 14-15.
With respect to court-imposed costs and fines, defense counsel argued:
I would ask, Your Honor, as far as the costs go, he has got some hurdles he is going to have to get over. His family is going to have some hurdles and they are going to help him over and he is going to be faced with a tremendous amount of fines on this case when he gets out. There is a $3,000 cleanup fee, which I don't think the court has any authority to waive or for any purpose at all, but I would ask, as the Court has suggested, that the $2,000 drug fine be waived for indigency....
RP at 16-17.
In response, the deputy prosecutor asked the trial court to follow the plea agreement recommendation. "There is the mandatory $2,000 drug fine, which the court can defer to [sic] to indigency." RP at 18.
The court followed the DOSA recommendation, thus imposing 36 months of confinement, one-half of the mid-point of the standard range, followed by 36 months of community placement. Anticipating that the court was not going to impose the $2,000 drug fine, the deputy prosecutor informed the court it would need to find Mr. Mayer indigent. The trial court responded:
You know, I stilland I know you say it is two different statutes, but when you look at the scoring sheet, it just says $3,000 meth lab cleanup fee and on the other ones it talks about 69.54.30 unless indigent, doesn't talk about that at all in the meth lab scoring sheet.
RP at 26.
After some colloquy with the deputy prosecutor, the court further observed:
You know, when I look at this and I keep looking at it, it doesn't look like the Sentencing Guideline Commission meant to impose both. I mean, it is just not there unless it is an oversight on their part.
RP at 26.
The judge then noted that her brothers make more money than she does as body and fender men. "It is a good business." RP at 27. When the trial court asked Mr. Mayer if he could find work after incarceration, he responded: "I can usually find a job in a day or two, yeah." RP at 27.
The trial court then ruled as follows:
All right. I'm not going to impose the $2,000. I am not convinced I need to make the finding of indigency, but if I do, then I will make that finding based on he is going to be unemployed for a while, obviously, while he is in the institution. It is a stretch to find him indigent for that purpose, but I think that what we have put together here is fair, so I'm not going to impose the $2,000.... It is even ambiguous when you look at Roman Numeral I-38 in the Implementation Manual under Fines.
RP at 27. On the judgment and sentencing form, the trial court deferred the $2,000 drug fine "due to indigency." CP at 13.
The State appealed.

ANALYSIS

A. Mandatory Nature of RCW 69.50.430
The issue is whether the drug fines ($1,000 or $2,000) authorized under RCW 69.50.430 are mandatory in nature, and may not be suspended or deferred until after a finding that the defendant is indigent. The trial court doubted the fine was mandatory but found Mr. Mayer indigent anyway and deferred the fine.
We review de novo a trial court's interpretation and application of a statute to a given set of facts. State v. Law, 110 Wash. App. 36, 39, 38 P.3d 374 (2002). In interpreting a statute, this court strives to "best advance" the underlying legislative purpose. State v. C.J., 148 Wash.2d 672, 685, 63 P.3d 765 (2003). Absent ambiguity, we interpret the plain meaning of the language on the face *220 of the statute and closely related statutes in light of the underlying legislative purpose. See Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003); Wagg v. Estate of Dunham, 146 Wash.2d 63, 73, 42 P.3d 968 (2002); Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002).
The applicable statute here states:
(1) Every person convicted of a felony violation of RCW 69.50.401, 69.50.402, 69.50.403, 69.50.406, 69.50.407, 69.50.410, or 69.50.415 shall be fined one thousand dollars in addition to any other fine or penalty imposed. Unless the court finds the person to be indigent, this additional fine shall not be suspended or deferred by the court.
(2) On a second or subsequent conviction for violation of any of the laws listed in subsection (1) of this section, the person shall be fined two thousand dollars in addition to any other fine or penalty imposed. Unless the court finds the person to be indigent, this additional fine shall not be suspended or deferred by the court.
RCW 69.50.430.
Division Two of this court recently interpreted RCW 69.50.430(1) for purposes of the $1,000 fine, and held the fine "cannot be waived unless the court makes a finding of indigency." State v. Cowin, 116 Wash.App. 752, 760, 67 P.3d 1108 (2003) (citing State v. Martin, 137 Wash.2d 149, 154, 969 P.2d 450 (1999)). The statute plainly uses the term "shall." RCW 69.50.430. The term "shall" in a statute "imposes a mandatory requirement unless a contrary legislative intent is apparent." Martin, 137 Wash.2d at 154, 969 P.2d 450. Nothing in the language of RCW 69.50.430 indicates anything other than a mandatory intent. The sole exception is where the trial court finds the defendant to be indigent. RCW 69.50.430; see also State v. Baldwin, 63 Wash.App. 303, 306, 818 P.2d 1116, 837 P.2d 646 (1992) (noting trial court waived the RCW 69.50.430 fine upon finding defendant indigent).
The trial court apparently thought the $3,000 clean-up fee incorporated the mandatory fine. That is incorrect. The $3,000 clean-up fee is a component of the fine the trial court may impose for manufacturing amphetamine or methamphetamine. RCW 69.50.401(1)(a)(ii). In other words, if the trial court imposes a discretionary fine for manufacturing methamphetamine, the first $3,000 collected from that fine "must be deposited with the law enforcement agency having responsibility for cleanup of laboratories, sites, or substances used in the manufacture of the methamphetamine," to be used for clean-up costs. Id. In contrast, the fines authorized under RCW 69.50.430 are separate and mandatory. See Cowin, 116 Wash.App. at 760, 67 P.3d 1108. Accordingly, the State is correct; RCW 69.50.430 sets forth mandatory minimum fines for the enumerated offenses. Cowin, 116 Wash.App. at 760, 67 P.3d 1108.
As discussed next, resentencing is necessary. But before reaching our next issue, we point out what appears to be another matter for the trial court and the State to consider at resentencing. Regarding the fine amount, the State argued for imposition of a mandatory $2,000 fine. Such a fine is mandatory where the defendant has "a second or subsequent conviction for violation of any of the laws listed in subsection (1)" of the statute. RCW 69.50.430(2). However, Mr. Mayer's Washington criminal history does not indicate a conviction of one of the enumerated crimes. The statute does not contain language recognizing his apparent previous drug possession conviction in Idaho. Absent a prior conviction listed under RCW 69.50.430(1), it would appear the trial court could not impose the $2,000 mandatory fine. RCW 69.50.430(2). Instead, it appears Mr. Mayer was subject to a mandatory fine of $1,000. RCW 69.50.430(1).
In any event, Mr. Mayer's criminal history indicates a prior conviction in Idaho for "PCS," which most likely stands for possession of a controlled substance. A person who has a current conviction under chapter 69.50 RCW and who also has a prior narcotics conviction under any federal or state statute is considered to have committed a second or subsequent offense. RCW 69.50.408(b). "Any person convicted of a second or subsequent offense under this chapter may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to *221 twice that otherwise authorized, or both." RCW 69.50.408(a). According to the plain language of the statute, the trial court had discretion to double the $1,000 fine authorized under RCW 69.50.430(1) because of Mr. Mayer's previous Idaho conviction. RCW 69.50.408(a); see also Martin, 137 Wash.2d at 154-55, 969 P.2d 450 (discussing different meanings of "may" and "shall"). This is a matter the trial court can consider on remand.
Given the trial court's misapplication of RCW 69.50.430, and Mr. Mayer's criminal history, remand is necessary.

B. Mr. Mayer's Indigent Status
Having determined the mandatory nature of RCW 69.50.430, the next issue is whether the trial court erred in finding Mr. Mayer indigent for purposes of waiving the mandatory drug fine.
As noted, the trial court may not suspend or defer the mandatory drug fine "[u]nless the court finds the person to be indigent." RCW 69.50.430(1), (2). The parties disagree on the proper standard of review. The State asserts the standard is abuse of discretion. Mr. Mayer contends the determination of indigency is factual and thus reviewable under the clearly erroneous standard.
The statute suggests different standards of review apply for different purposes. Generally, the statute implies the trial court has discretion to defer or suspend the fine, provided it finds the defendant to be indigent. RCW 69.50.430; see also Baldwin, 63 Wash.App. at 306, 818 P.2d 1116 (noting the trial court "chose" to waive the fine). But the trial court's assessment of the defendant's ability to pay court-imposed financial obligations is a factual determination generally reviewable under the error of law standard. See Baldwin, 63 Wash.App. at 312, 818 P.2d 1116. In sum, the trial court's discretionary authority to waive the mandatory fine turns on the factual finding of indigency. See In re Parentage of Jannot, 110 Wash.App. 16, 22, 37 P.3d 1265 (2002) (noting that in some circumstances the trial court abuses its discretion if its decision totally lacks factual support or is contrary to applicable laws), affirmed, 149 Wash.2d 123, 65 P.3d 664 (2003).
The statute's use of the verb "to be" indicates the trial court must assess indigency in accordance with the person's situation at the time of sentencing. RCW 69.50.430(1), (2). In other words, the trial court assesses the defendant's financial wherewithal as he or she stands before the court, not as it was in the past, or as it will be as a result of his or her incarceration. Here, no meaningful discussion occurred as to Mr. Mayer's current assets, his credit history, or other potential economic resources. See generally State v. Rutherford, 63 Wash.2d 949, 954, 389 P.2d 895 (1964) (discussing factors weighing on defendant's indigency). Instead, the trial court based its indigency finding solely on the impact incarceration will have on Mr. Mayer's earning capacity. The trial court made the finding even though Mr. Mayer indicated he will have no difficulty finding work as a highly trained body and fender man after he gets out of prison. The trial court's finding was devoid of supporting evidence indicating Mr. Mayer was indigent at the time of sentencing.
Mr. Mayer contends the fine is unfair in that interest will accumulate during his period of incarceration. Neither the trial court nor an appellate court can remedy that situation; the statute plainly mandates imposition of the fine absent a finding of indigence. RCW 69.50.430. The perceived inequity of interest accrual during incarceration is a matter better addressed by the legislature.
In sum, the evidence before the trial court was insufficient to support a finding of indigency. Because the trial court erred in finding Mr. Mayer indigent, it abused its discretion in deferring the mandatory fine. This deficiency may also be considered at the resentencing.
Reversed.
WE CONCUR: KURTZ and KATO, JJ.