# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  45666-4-II |
| Respondent, | |
| v. | |
| MONTGOMERY F. McCLEERY, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Montgomery McCleery appeals his conviction for possession of a controlled substance, arguing that the trial court erred in concluding that he gave a voluntary statement to a detective.  He also challenges the trial court's imposition of $1,500 in attorney fees. The State filed a motion on the merits to affirm, which a commissioner of this court referred to this panel for consideration.  RAP 18.14(a).  We affirm McCleery's conviction, but reverse his sentence and remand to the trial court to resentence him after making an individualized determination of McCleery's ability to pay the full amount of attorney fees.

## FACTS

The State charged McCleery with possession of methamphetamine.  Before McCleery's trial, the parties litigated the admissibility of statements McCleery made to City of Aberdeen Detective John Snodgrass while McCleery was in custody following his arrest.  *See* CrR 3.5.

Officer Jason Capps arrested McCleery shortly after midnight on May 10, 2013. After Capps administered *Miranda*[1] warnings, McCleery told Capps that he did not want to speak to him.[2]

Snodgrass testified at the CrR 3.5 hearing that approximately eight hours after McCleery's arrest, he asked a corrections officer to contact McCleery to see "if Mr. McCleery wanted to speak to me" and "would be open for an interview." Report of Proceedings (RP) (July 26, 2013) at 7, 11. The corrections officer reported to Snodgrass that McCleery wished to speak with him. Snodgrass read McCleery his *Miranda* rights. McCleery stated he understood his rights and spoke with Snodgrass. The trial court concluded that McCleery made a knowing, intelligent, and voluntary waiver of his rights and gave a voluntary statement to Snodgrass.

McCleery was convicted after a jury trial. Although he filed a presentencing memorandum requesting the trial court impose $500 in attorney fees, the trial court required McCleery to pay $1,500 in attorney fees.

ANALYSIS

I. CRR 3.5

McCleery first argues that the trial court erred in admitting his statements to Snodgrass. He states that when he was initially arrested, he invoked his right to remain silent. He contends that because he never initiated further discussions with Snodgrass, his statements should not have been admitted. He also highlights that neither the arresting officer nor the corrections officer

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Capps did not testify at the CrR 3.5 hearing, but the State acknowledges that McCleery declined to speak with him.

testified and asserts that in the absence of such testimony, the trial court could not determine whether either officer coerced or threatened McCleery.

The State relies on *State v. Robbins*, 15 Wn. App. 108, 110-11, 547 P.2d 288 (1976), for the proposition that a detainee may be requestioned even after invoking his or her *Miranda* rights, so long as he or she is again advised of his or her *Miranda* rights and there is no evidence that the individual was coerced while incarcerated. *Robbins*, in turn, relied on the United States Supreme Court case of *Michigan v. Mosley*, 423 U.S. 96, 113, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975). *Mosley* permitted questioning of a suspect regarding an unrelated crime two hours after he exercised his right to remain silent and following readmonition of *Miranda* warnings. 423 U.S. at 100-06.

We review the validity of a *Miranda* waiver de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996). A defendant may waive his *Miranda* rights if the waiver is knowing, voluntary, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State v. Bradford*, 95 Wn. App. 935, 944, 978 P.2d 534 (1999). We examine the totality of the circumstances to determine if the waiver was made voluntarily and with "'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Bradford*, 95 Wn. App. at 944 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)). The State bears the burden of showing by a preponderance of the evidence that a waiver of *Miranda* rights was knowing, voluntary, and intelligent. *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27 (2007). A trial court's determination that a defendant's statements were made voluntarily will not be disturbed on appeal if there is substantial evidence in the record to support it.

Police interrogation must stop when a person asserts his or her *Miranda* rights unless the person initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). A detainee, however, may be found to have waived the right if he or she "freely and selectively responds to police questioning after initially asserting *Miranda* rights." *State v. Wheeler*, 108 Wn.2d 230, 238, 737 P.2d 1005 (1987) (citing *State v. Coles*, 28 Wn. App. 563, 567, 625 P.2d 713 (1981)); *see also State v. Haynes*, 16 Wn. App. 778, 786, 559 P.2d 583 (1977) ("[A] defendant who has exercised his *Miranda* right to remain silent, and whose right to cut off questioning has been 'scrupulously honored' by the police, may nevertheless be subsequently questioned under appropriate circumstances to elicit admissible statements." (quoting *Mosley*, 423 U.S. at 103)).

To determine the validity of a waiver of a defendant's previously asserted right to remain silent, a court may consider the following factors: (1) whether the defendant's right to cut off questioning was scrupulously honored, (2) whether law enforcement engaged in further conduct amounting to interrogation before obtaining the waiver, (3) whether law enforcement engaged in tactics tending to force the defendant into changing his mind, and (4) whether the waiver was knowing and voluntary. *Wheeler*, 108 Wn.2d at 238. To be voluntary, statements must be the product of rational intellect and free will. *State v. Rupe*, 101 Wn.2d 664, 679, 683 P.2d 571 (1984). In determining voluntariness, we evaluate the totality of the circumstances, including the physical and mental condition of the accused, his experience, and the conduct of the police. *Rupe*, 101 Wn.2d at 679.

*State v. Brown*, 158 Wn. App. 49, 60-62, 240 P.3d 1175 (2010), for example, concluded that a two-hour break in questioning after the defendant initially stated he wished to remain silent satisfied the *Wheeler* factors when the questioning officer again advised the defendant of his *Miranda* rights before speaking with him. Here, the break was much longer.

McCleery also argues that in order for his statements to be admissible, he—and not law enforcement—must have initiated the discussion with Snodgrass. However, this is not a controlling factor. Our Supreme Court recently noted,

> [Officers] may not resume discussion with the suspect until the suspect reinitiates further communication with the police, *or* a significant period of time has passed and officers reissue a fresh set of *Miranda* warnings and obtain a valid waiver. [384 U.S. at 473-74]; *see* [*Mosley*, 423 U.S. at 103-04].

*In re Pers. Restraint of Cross*, 180 Wn.2d 664, 682, 327 P.3d 660 (2014) (emphasis added). Here, after a significant period of time passed, McCleery received a fresh set of *Miranda* warnings and Snodgrass obtained a valid waiver. Thus, the trial court properly admitted McCleery's statements at trial.

## II. SENTENCE

McCleery appeals his sentence on the grounds that the trial court violated his right to counsel by ordering him to pay attorney fees when he lacks the ability to pay them. RCW 10.01.160(3). In a presentencing memorandum, McCleery requested the trial court impose the following legal financial obligations: $200 in court costs, a $500 victim witness assessment, $500 in attorney fees, and a $100 deoxyribonucleic acid (DNA) collection fee, for a total of $1,300. He

also noted that "this conviction may prevent him from obtaining employment in his preferred area."[3]  Clerk's Papers (CP) at 27.

The trial court, however, imposed $1,500 in attorney fees.  It also imposed a $500 victim assessment, $200 in court costs, a $100 crime lab fee,[4] and a $100 DNA collection fee.  Finally, the trial court imposed, but deferred due to indigency, a $2,000 fine pursuant to "RCW 9A.20.21; [Violation of the Uniform Controlled Substances Act (VUCSA)] chapter 60.50 RCW."  The total amount owed for attorney fees and costs is $2,400 plus $2,000 in a deferred fine for a total amount due of $4,400.  The only reference to fees at the sentencing hearing was from McCleery's counsel who referenced the imposition of "standard fines and assessments."  RP (Oct. 28, 2013) at 84.  The judgment and sentence, however, provides, "The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change."  CP at 30.

---

[3] We conclude that this preserved an objection to larger fees on the ground that McCleery may not be able to pay.  RAP 2.5(a).  *See State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013) (concluding that defendant failed to preserve challenge to trial court's imposition of legal financial obligations because he failed to object at sentencing), *aff'd in relevant part and remanded*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015) ("A defendant who makes no objection to the imposition of discretionary [legal financial obligations (LFOs)] at sentencing is not automatically entitled to review.").

[4] RCW 43.43.690(1) provides, "[T]he court may suspend payment of all or part of the fee if it finds that the person does not have the ability to pay the fee."  McCleery, however, does not challenge the trial court's imposition of this fee.

In its recent decision in *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015), our Supreme Court held that the trial court must examine a defendant's ability to pay discretionary legal financial obligations (LFOs):[5]

> [T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current *and future ability to pay*. Within this inquiry, the court must also consider important factors, as amici suggest, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

(Emphasis added.) *See also* RCW 10.01.160 (1)-(3) (imposition of defense costs and attorney fees is discretionary).

We note that the trial court deferred the $2,000 drug fine due to current indigency, so it could be argued that the trial court did consider McCleery's ability to pay in assessing the LFOs. But for the purpose of former RCW 69.50.430 (2003), the sentencing court looks to only *present* financial status. "[T]he trial court assesses the defendant's financial wherewithal as he or she stands before the court, not as it was in the past, or as it will be as a result of his or her incarceration." *State v. Mayer*, 120 Wn. App. 720, 728, 86 P.3d 217 (2004). It should engage in a "meaningful discussion" of the defendant's "current assets, his credit history, or other potential economic resources." *Mayer*, 120 Wn. App. at 728. The fact that the trial court deferred the drug fine on the basis of current indigency does not satisfy the court's duty as outlined in *Blazina* to make an individualized finding of present and future ability to pay. In fact, the finding of current indigency could support a conclusion that McCleery lacks the ability to pay LFOs. And finally,

---

[5] *See State v. Lundy*, 176 Wn. App. 96, 102-05, 308 P.3d 755 (2013) (distinguishing between mandatory and discretionary LFOs).

the State does not argue that the fine deferral supports the fact that the sentencing court satisfied *Blazina* or RCW 10.01.160(3).

Because the record here contains only the "boilerplate language" disfavored by *Blazina* and a finding of current indigency, we remand this matter to the trial court for consideration of McCleery's ability to pay the additional $1,000 in attorney fees.[6] We affirm the conviction and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

MAXA, J.

MELNICK, J.

---

[6] Although on appeal McCleery challenges the full amount of attorney fees, he was the one who suggested the trial court impose $500 in fees. Under the doctrine of invited error, a party cannot set up an error in the trial court and then complain of it on appeal. *See In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014).