# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 32781-7-III |
|  | ) |  |
| Respondent, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | PUBLISHED OPINION |
| RONALD A. MALONE, | ) |  |
|  | ) |  |
| Appellant. | ) |  |

PRICE, J.P.T.* — Ronald Malone pled guilty to possession of a controlled substance—methamphetamine. At sentencing the judge imposed both mandatory and discretionary legal financial obligations (LFOs) upon Malone. On appeal, Malone presents four arguments: (1) the trial court erred when it imposed discretionary LFOs without an on the record inquiry into Malone's ability to pay, (2) the mandatory DNA[1] collection fee violates substantive due process, (3) the mandatory DNA collection fee violates equal protection, and (4) the trial court abused its discretion by ordering Malone to submit a DNA sample. We reach and agree only with Malone's first contention, and remand for resentencing.

---

* Judge Michael P. Price is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1] Deoxyribonucleic acid.

No. 32781-7-III
*State v. Malone*

## *FACTS*

On May 29, 2014, Ronald Malone pled guilty to the crime of felony possession of a controlled substance—methamphetamine. Additional facts are not relevant to the assignments of error in this case, except to note that Malone has prior felony convictions from the time period after the mandatory DNA assessment began. Clerk's Papers (CP) at 16.

## *PROCEDURE*

Malone pled guilty to possession of a controlled substance as part of a plea bargain that dropped charges for two charges of bail jumping. He was sentenced to the low end of the sentencing range, 12 months and one day. In addition, the court imposed LFOs, some which are mandatory while others are discretionary. The mandatory financial obligations are: $500 victim assessment fee, $200 criminal filing fee, $100 DNA collection fee and $2,000 repeat offender fee[2] for a total of $2,800 in mandatory fees. The discretionary financial obligations are: $600 court appointed attorney recoupment, $200 warrant fee, $250 drug enforcement fund, and $100 crime lab fee for a total of $1,150 in discretionary fees. The court also ordered Malone to pay the unspecified costs of incarceration with a cap of $500, as well as any future medical costs that Yakima County may incur upon his behalf.

---

[2] This is a mandatory fine, but upon a finding of indigence the judge may defer or suspend it. RCW 69.50.430; *State v. Mayer*, 120 Wn. App. 720, 727, 86 P.3d 217 (2004).

2

The judgment and sentence included a standard boilerplate recitation about Malone's ability to pay, "The Court has considered the total amount owing, the defendant's past, present, and future ability to pay LFOs, including the defendant's financial resources and the likelihood that the defendant's status will change." CP at 17.

The judgment and sentence also stated the "defendant shall have a biological sample collected for purposes of DNA identification." CP at 18. Malone did not object to either the fees or the DNA collection at sentencing. The trial court record does not reflect an inquiry into Malone's individual present or future ability to pay.

*ANALYSIS*

I. Discretionary LFOs

The first error Malone alleges is the imposition of discretionary LFOs without the trial court conducting an individualized inquiry on the record into defendant's ability to pay. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). Malone did not raise this issue at the trial court, and we have discretionary authority to decline to hear arguments for the first time on appeal. RAP 2.5(a); *State v. Russell*, 171 Wn.2d 118, 122, 249 P.3d 604 (2011). *Blazina* does not mandate review of the alleged error in the imposition of discretionary LFOs; instead it notes that "each appellate court must make its own decision to accept discretionary review." *Blazina*, 182 Wn.2d at 835. Persuaded by the policy concerns outlined in *Blazina*, we choose to exercise discretion in this case to review the merits of this argument. *See id.* at 835-38.

3

Trial courts must impose mandatory LFOs, and may impose discretionary costs as well. RCW 9.94A.760; RCW 10.01.160(1). The statute uses mandatory 'shall' language that reads:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

RCW 10.01.160(3). *Blazina* interprets this to impose a duty on the trial court judge to conduct an on the record, *individualized* inquiry of the defendant's present and future ability to pay before imposing discretionary fees, not use boilerplate standard language. *Blazina*, 182 Wn.2d at 838.

In the present case the trial court included the insufficient standard language on Malone's ability to pay discretionary costs. CP at 17. But the record does not reflect any consideration of incarceration, job status, debts, or other indicators of ability to pay. Nonetheless the trial court ordered discretionary LFOs. In light of the recent clarification of the requirements of RCW 10.01.160(3) we remand the judgment and sentence to the trial court with instructions to conduct the required inquiry into Malone's ability to pay to determine whether discretionary LFOs are still appropriate.

II.     Mandatory DNA assessment

Malone also challenges the DNA collection fee on substantive due process and equal protection grounds. He also contends that it is an abuse of discretion for the trial

court to order him to submit a DNA sample if one is already on record. The DNA assessment requires a mandatory $100 LFO and a biological sample. RCW 43.43.754(1). A new sample is not required if a sample is already on file. RCW 43.43.754(2). Like his challenge to the LFOs above, these arguments are being put forth for the first time on appeal, meaning we must also consider whether to grant discretion to review these arguments.

As we stated earlier, we have authority under the rules to accept review of an issue being raised for the first time on appeal. RAP 2.5(a). We chose to review the issue of discretionary LFOs in part because of the strong policy concerns outlined in *Blazina* but also importantly because that case outlines a duty of the trial court judge to conduct an inquiry into the defendant's ability to pay. That differs from the constitutional arguments being presented now where Malone would bear the burden. Under general discretion we decline to hear these claims of error now because they were not preserved below.

Separate from our discretion to hear any argument for the first time on appeal, RAP 2.5(a) also affirmatively allows a party to raise an error for the first time on appeal for a variety of reasons, the relevant one being if it is "manifest error affecting a constitutional right." RAP 2.5(a)(3). To be "manifest" the record must reflect the facts necessary to adjudicate the claimed error on appeal. *State* v. *Koss*, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014). This question of manifest error is identical to the argument presented in *State v. Stoddard* which we declined to review. *State v. Stoddard*, 192 Wn.

App. 222, 228, 366 P.3d 474 (2016). In that case we found there was insufficient evidence on the record of the appellant's financial status to support a challenge to the mandatory $100 collection fee. *Id.* Likewise in the case at hand Malone's argument assumes his poverty, but the record does not show Malone presenting evidence that he cannot pay the mandatory $100 assessment fee. We decline to hear constitutional argument on the mandatory DNA collection fee.

Malone also argues that because he has been convicted in Washington in the past, his DNA sample has already been collected by the Washington State Patrol pursuant to RCW 43.43.754, and it is error to require him to submit a new sample. In a similar vein to his arguments of poverty, the record before us does not reflect that Malone's DNA was actually taken by the Washington State Patrol Crime Laboratory or still is on file, and so is lacking in evidence.

## CONCLUSION

We remand to the trial court to conduct an individualized *Blazina* inquiry on Ronald Malone's ability to pay discretionary LFOs. Otherwise we affirm the sentence.

Price, J.P.T.

I CONCUR:

Fearing, J.

6

32781-7-III

KORSMO, J. (dissenting in part) — Except for the decision to remand for a new hearing on the discretionary legal financial obligations, I agree with the majority opinion. For the reasons stated previously, we should decline to exercise our discretion in this instance, particularly since RCW 10.01.160 gives Mr. Malone the ability to raise the matter again at any time. *See State v. Munoz-Rivera*, 190 Wn. App. 870, 361 P.3d 182 (2015) (Siddoway, J., concurring); *State v. Arredondo*, 190 Wn. App. 512, 539-40, 360 P.3d 920 (2015) (Korsmo, J., dissenting); *State v. Duncan*, 180 Wn. App. 245, 327 P.3d 699 (2014), *aff'd and remanded*, No. 90188-1 (Wash. April 28, 2016). We have reached the curious circumstance where an alleged violation of a statutory obligation is given review while a constitution-based claim is not reviewed. That practice certainly stands the RAP 2.5(a)(3) exception on its head.

As there is adequate relief available for this statutory claim, I would affirm.

Korsmo, J.