IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  36387-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ELI GALLEGOS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Eli Gallegos appeals convictions for possession of a controlled

substance and criminal trespass.  He asks that we vacate the first conviction and dismiss

the charges because strict liability for possession of a controlled substance violates due

process.  He asks that we vacate his second conviction because a jury instruction

misstated an element of the crime of criminal trespass.  We deny his first request and

grant his second request.

## FACTS

The prosecution of Eli Gallegos stems from his visit to Elizabeth Sauer's residence

on March 4, 2018.  The facts begin years before.  Gallegos and Elizabeth Sauer's adult

daughter previously maintained a romantic relationship.  After the relationship ended,

Elizabeth Sauer told Gallegos at least fifteen times he was no longer welcome at her home. All of these comments occurred before 2017. Sauer never expressly stated to Gallegos how long her disinvitation lasted.

On February 24, 2017, Eli Gallegos went to Elizabeth Sauer's home despite Sauer's instruction to stay away. Sauer told Gallegos to leave her premises, but Gallegos refused. Sauer called 911 to report a trespass. Gallegos then left in his car. Whitman County Sheriff Deputy Dan Brown responded to Sauer's call and, on the way to the home, passed Gallegos' vehicle. Deputy Brown stopped Gallegos' car and spoke to Gallegos during the traffic stop. Brown told Gallegos he lacked permission to return to Sauer's home and he would be arrested for trespassing if he did so. Brown handed Gallegos no paperwork. Brown did not tell Gallegos for how long he could not return to the Sauer house or that the trespass warning was permanent.

On March 4, 2018, Eli Gallegos went again to Elizabeth Sauer's home. Gallegos once again wished to see Sauer's adult daughter, who was recently released from jail. Gallegos wished to offer her money. On Gallegos' arrival at Sauer's residence, Sauer instructed him to leave, and, when he refused, Sauer called the police. Because she returned inside the residence to call, Sauer does not know how long Gallegos remained on her property.

Whitman County Sheriff Sergeant Michael Jordan responded to the March 4, 2018 call from Elizabeth Sauer. Sergeant Jordan went to Eli Gallegos' home, where Gallegos

2

admitted to earlier being at Sauer's property. Sergeant Jordan placed Gallegos under arrest, but did not then handcuff Gallegos. Jordan asked Gallegos questions about events at Sauer's home. Gallegos walked toward the kitchen. A struggle between Jordan and Gallegos, partially captured by Sergeant Jordan's body camera video, ensued.

Eli Gallegos and Sergeant Michael Jordan disagree as to what occurred when Gallegos went to the kitchen, and the video does not resolve the discrepancies. Sergeant Jordan testified that Gallegos placed his hand in his right front pant pocket as he turned to the kitchen. Jordan grabbed Gallegos to stop him from entering the kitchen, and the small struggle ensued. Throughout the struggle, Jordan could see Gallegos' hands and saw him trying to hide something in a kitchen drawer. Coins fell from Gallegos' right hand, but Gallegos' kept a firm grasp on a small bag. Content in the bag later tested as methamphetamine. According to Sergeant Jordan, Gallegos' hand never entered his jacket pocket.

Eli Gallegos testified that the small bag was in the pocket of a jacket, located in the kitchen, which jacket he went to retrieve after Sergeant Michael Jordan told him he was under arrest. Gallegos donned the jacket, went to take money from the pocket, and placed the money in his couch. Gallegos claimed a neighbor, who was in the process of moving, owned the jacket, and Gallegos disclaimed knowledge of a bag being inside the pocket of the jacket. Gallegos averred that he wished to purchase a washer and dryer, so he went to the neighbor's home to view appliances. The neighbor informed Gallegos that

3

he had a leak in his sink, and Gallegos offered to help fix the leak.  While repairing the sink, Gallegos dampened his shirt.  The neighbor handed Gallegos his jacket and a watch as payment, because the neighbor lacked funds to pay.  Unbeknownst to Gallegos, the jacket pocket contained a package of methamphetamine.

After being placed in handcuffs, Eli Gallegos, in response to further questioning, revealed that he remembered being told a year earlier, by Deputy Dan Brown, not to return to the Sauer residence.

PROCEDURE

The State of Washington charged Eli Gallegos with a felony, possession of a controlled substance, methamphetamine, and with a misdemeanor, criminal trespass in the second degree.  Before trial, the trial court conducted a CrR 3.5 hearing, during which it ruled to admit as trial evidence statements made by Eli Gallegos to Deputy Dan Brown and Sergeant Jordan Michael.

We relate some of the testimony at trial because of its importance in determining whether to reverse the conviction for criminal trespass.  Whitman County Sheriff's Sergeant Michael Jordan testified:

> Q Did you ask Mr. Gallegos [when you arrested him on March 4, 2018] if he recalled the contact with Sgt. Jordan about being trespassed?
> A With Sgt. Brown?
> Q Sorry.  With Sgt. Brown.
> A Yes, I did.
> Q Okay.  And did he recall that—interaction?
> A Yes, he did.

4

Q Okay.

Report of Proceedings (RP) at 86.

Eli Gallegos testified during trial:

Q And so,—how was it that this baggie that we saw here today, how did that come to be on you?

A Well, I—I didn't even know—the—the—got the jacket, it was hanging by the wall. I didn't know what—was in it. But when he came—I was eating tacos, with no shirt, and he told me that was me arrested by trespassing, so I asked him—*I didn't know* (inaudible) *trespassing* but—put—jacket on, put it on—before we had to go had to pat—(inaudible), and I was—I was trying to look for my—my money to get—to put it in the couch, and he searched the jacket (inaudible) was a little baggie inside the jacket, which I didn't even know. And that's—So I told—I told—

. . . .

And—officers came in saying that—I was not—I was arrested because I was—(inaudible) supposed to be, *which I didn't even know*—

RP at 105, 107 (emphasis added).

The trial court delivered two jury instructions relevant to this appeal. First, jury instruction 10, which declared in its entirety:

To convict the defendant of the crime of criminal trespass in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about 4th day of March, 2018, *the defendant knowingly entered or remained in or upon the premises of another*;

(2) *That the defendant knew that the entry or remaining was unlawful*; and

(3) That this act occurred in the Whitman County.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 28 (emphasis added). Jury instruction 11 read:

A person knows or acts knowingly or with knowledge with respect to a fact when he is aware of that fact. *It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.*
If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he acted with knowledge of that fact.
When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

CP at 29 (emphasis added).

The State's closing argument echoed jury instruction 11 and asked the jury to consider what a reasonable person would know:

Now a—jury instruction, No. 11, like to draw your attention to that second paragraph, there. If a person has information that would lead a reasonable person in the same situation to believe that a fact exists *the jury is permitted but not required to find that he acted with knowledge of that fact.*
Well a reasonable person would know after being informed by law enforcement that if they return they're going to be arrested, that they're trespassed from the property. A reasonable person would know that they are not supposed to go back to that property, that it would be unlawful for them to go back to that property. And a reasonable person would know, if a property owner told them 15 to 20 times that they are not welcome, that they are not to be here, a reasonable person would know that it would not be lawful for them to go to that property. And a reasonable person would know, after being told to leave, and that they were going to call the police, that they need to leave and that they are not there lawfully.

6

Mr. Gallegos knew he was not supposed to be there, and he went to the property anyway, and he stayed at the property anyway.

RP at 126-27 (emphasis added).

The jury found Gallegos guilty on the charges of possession of a controlled substance and criminal trespass.

At sentencing, the superior court clerk's file contained a financial information completed by Eli Gallegos. Gallegos, on this form, requested appointment of an attorney for the superior court trial at public expense. Gallegos averred he received income of $1,000 monthly and owned no assets. He marked the form's box that disclosed he received income from social security.

At the beginning of the sentencing hearing, Eli Gallegos' attorney submitted paperwork requesting that Gallegos be found indigent for purposes of the appeal. The sentencing court agreed to the request.

During sentencing, the trial court asked Eli Gallegos if he was employed. RP 146. Gallegos replied, "I'm disabled sir. My knees." RP at 146. Gallegos also stated that he did not have a car. Gallegos and the sentencing court then exchanged comments:

> [COURT]: Okay. So you're moving to California? Is that your—
> [GALLEGOS]: Well, I living—I was—I was in L.A. I came—I came from L.A. for this case.
> [COURT]: Right.
> [GALLEGOS]: But I rented—apartment, in Pullman, for—for this case only, a month to month lease.
> . . . .

7

> [COURT]: So, are you able to pay $50 a month towards your legal/financial obligations?
> [GALLEGOS]: Yes.  Yes, sir.
> . . . .
> [GALLEGOS]: Okay.  Can you—Well, okay.  I get every check every third of the month, so can you make it—every third of the month?

RP at 146-47.

After the colloquy between the sentencing court and Eli Gallegos, trial defense counsel asked if the court intended to find Gallegos indigent only for purposes of the appeal or also for the legal financial obligations.  The trial court responded that it did not find Gallegos indigent for the financial obligations because Gallegos said he was able to pay $50 per month.  After the court's statement, Gallegos volunteered:

> [GALLEGOS]: I pay all the fines before, everything that I owed the court before.

RP at 148.

The sentencing court imposed a $500 victim assessment obligation and a $2,000 violation of the uniform controlled substance act (VUCSA) fine, for a total of $2,500.  The judgment imposed interest on the obligations from the date of judgment until payment in full.

## LAW AND ANALYSIS

On appeal, Eli Gallegos challenges both of his convictions and his sentence.  He challenges his conviction for possession of a controlled substance on the theory that Washington's strict liability crime of possession violates the due process clause.  He

8

challenges his conviction for criminal trespass on the basis of inconsistent jury instructions. He challenges his legal financial obligations because of his poverty. We address the assignments of error in such order.

## Possession of a Controlled Substance

Eli Gallegos argues that the offense of possession of a controlled substance should include a mens rea element. Gallegos further contends that, without a mens rea requirement, the crime violates an accused's due process rights. According to Gallegos, the lack of mens rea breaches the presumption of innocence and improperly shifts the burden to a defendant to prove his or her possession was "unwitting." He requests that we interpret the charging statute, RCW 69.50.4013, with a mens rea element or declare the statute unconstitutional. On the assumption that we rule that the crime of possession of a controlled substance carries a mens rea element, Gallegos entreats us to determine that the defense of unwitting possession improperly shifts the burden of proof on the defendant in violation of due process.

The State of Washington responds that the state Supreme Court has consistently ruled that RCW 69.50.4013 does not violate due process despite the absence of a mens rea requirement and that the defense of unwitting possession does not improperly shift the burden to the defendant. We agree with the State. Stare decisis demands that we reject Eli Gallegos' assignment of error.

9

RCW 69.50.4013 creates the crime of possession of a controlled substance. RCW 69.50.4013(1) declares:

It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.

As acknowledged by Eli Gallegos, under Supreme Court precedent, drug possession is currently a strict liability crime in Washington State. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004); *State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981). A conviction for the crime requires no element of knowledge. *State v. Bradshaw*, 152 Wn.2d at 537-38. After the State proves the element of unlawful possession, the accused bears the burden to put forward an affirmative defense of unwitting possession. *State v. Bradshaw*, 152 Wn.2d at 538. Current Washington law holds that the affirmative defense does not improperly shift the burden of proof. *State v. Bradshaw*, 152 Wn.2d at 538.

Eli Gallegos asks that this court follow the example of foreign courts to prevent the criminalization of innocent behavior by leaving possession of a controlled substance a strict liability crime. Gallegos emphasizes that Washington State may be the only state that interprets drug possession as a true strict liability crime. In 2004, when our state Supreme Court decided *State v. Bradshaw*, 152 Wn.2d 528, 534 (2004), the court acknowledged that Washington and North Dakota were the two outlier states that did not

10

require a mens rea element in their respective controlled possession statutes. Gallegos then observes that the North Dakota legislature thereafter changed state law to include a mens rea component to the crime. *State v. Bell*, 649 N.W.2d 243, 252 (N.D. 2002). This observation backfires, however, because the Washington State legislature has not adopted legislation to add mens rea as an element to the Washington crime.

The precursor to Washington's current controlled possession statute included a mens rea element. LAWS OF 1923, ch. 47, § 3 declared:

> It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession *with intent to sell*, furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician regularly licensed to practice medicine and surgery.

RCW 69.50.4013, the current statute, omits any references to an intent or to knowledge. In *State v. Henker*, 50 Wn.2d 809, 314 P.2d 645 (1957), the Supreme Court concluded that the omission of any mens rea element was a purposeful act of the legislature.

> Had the legislature intended to retain guilty knowledge or intent as an element of the crime of possession, it would have spelled it out as it did in the previous statute. The omission of the words *with intent* evidences a desire to make mere possession or control a crime.

*State v. Henker*, 50 Wn.2d at 812.

Since 1957 when the Supreme Court decided *State v. Henker*, the high court has upheld its determination that Washington law criminalizes mere possession of a controlled substance. *State v. Boggs*, 57 Wn.2d 484, 485, 358 P.2d 124 (1961); *State v. Cleppe*, 96 Wn.2d at 378 (1981); *State v. Bradshaw*, 152 Wn.2d 528, 533 (2004). Also

since 1957, the legislature has not acted to add a mens rea element. When the legislature fails to act "at some point that silence itself is evidence of legislative approval." *1000 Friends of Washington v. McFarland*, 159 Wn.2d 165, 181, 149 P.3d 616 (2006).

Eli Gallegos asserts that, under *State v. Anderson*, 141 Wn.2d 357, 366-67, 5 P.3d 1247 (2000), unless the State positively shows that the legislature intended to omit a mental element, the courts should imply one. The State responds that, in *State v. Bradshaw*, 152 Wn.2d 528 (2004), the Supreme Court rejected this argument, for purposes of the possession of a controlled substance statute, because the legislative history of the possession statute demonstrated that the legislature intended no mens rea element. We agree with the State that the Supreme Court has already rejected Gallegos' contention.

Eli Gallegos also asserts that, if this court refuses to read a mens rea element into the statute, we should declare the statute unconstitutional. Gallegos relies on foreign cases to argue that the lack of a mens rea element unconstitutionally shifts the burden of proof to the defendant as the defendant is required to show unwitting possession. Once again, we must follow Supreme Court precedent. Any declaration of unconstitutionality should come from the state high court.

The Washington Supreme Court has ruled that the crime of possession of a controlled substance does not violate due process principles by reason of the lack of mens rea. *State v. Bradshaw*, 152 Wn.2d 528, 538 (2004). The United States Supreme Court

has declined to declare a mens rea to be a condition of constitutionality of a criminal statute. *United States v. United States Gypsum Company*, 438 U.S. 422, 437-38, 98 S. Ct. 2864, 57 L. Ed. 2d 856 (1978). Many harassment crimes, under RCW 9A.46.060, include no mens rea element. *State v. Joseph*, 3 Wn. App. 2d 365, 374, 416 P.3d 738, *review denied* (2018). The crime of driving under the influence of intoxicants does not carry a mens rea element. RCW 46.61.502.

In line with Supreme Court precedent, this court has held that RCW 69.50.4013, the possession of a controlled substance statute, does not violate due process even though the statute does not require the State to prove intent or knowledge to convict an offender of possession of a small amount of a controlled substance. *State v. Schmeling*, 191 Wn. App. 795, 802, 365 P.3d 202 (2015). This court has also observed that the legislature has the ability to create strict liability crimes that lack a mens rea element. *State v. Schmeling*, 191 Wn. App. at 801.

Eli Gallegos contends that his challenge is unique because he challenges the constitutional validity of the statute itself. Therefore, the cases outlined above do not control the issue.

Eli Gallegos urges this court to follow the concurring opinion in *State v. A.M.*, 194 Wn.2d 33, 448 P.3d 35 (2019) (McCloud, J. concurring). In *State v. A.M.*, a juvenile defendant challenged her conviction for possession of a controlled substance. She claimed the admission of a detention center inventory form violated her right against self-

incrimination and that the affirmative defense of unwitting possession violated her right to due process. The high court determined admission of the inventory form was constitutional error and declined to address the due process argument. The concurring opinion addressed Washington State's continued criminalization of defendants for mere possession of drugs. The concurrence observed that prior Washington cases had interpreted the possession statute under rules of statutory interpretation as a strict liability offense, and, therefore, the cases should be read as only statutory interpretation decisions. The concurrence added:

> A statute's settled interpretation does not, however, insulate the statute from a test of its constitutional validity. I would hold that the settled interpretation of Washington's basic drug possession statute offends due process insofar as it permits heavy criminal sanctions for completely innocent conduct.

*State v. A.M.*, 194 Wn.2d at 45 (2019).

We might agree with the concurrence in *State v. A.M.*, but we remain bound by pronouncements of the Supreme Court as a whole. Based on precedent, we refuse to declare RCW 69.50.4013 unconstitutional. We affirm Eli Gallegos' conviction for possession of a controlled substance.

## Criminal Trespass

Eli Gallegos next assigns error to the trial court's jury instructions 10 and 11, which Gallegos contends contradicted one another. In turn, Gallegos contends the instructions relieved the State of its burden of proof to prove that he knew his egress onto

Elizabeth Sauer's property was unlawful. The State admits that the instructions were contradictory, but contends the error was harmless. We accept the State's concession of instructional error.

Eli Gallegos did not object to jury instructions 10 and 11 at trial. Jury instructions that fail to inform the jury of an element of an offense relieve the state from its burden of proof and constitute an issue of manifest constitutional error which may be raised for the first time on appeal pursuant to RAP 2.5(a)(3). *State v. Stein*, 144 Wn.2d 236, 240-41, 27 P.3d 184 (2001). The State does not argue that Eli Gallegos cannot forward this assignment of error on appeal.

This court reviews alleged errors in jury instructions de novo. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Barnes*, 153 Wn.2d at 382. The jury instructions when read as a whole must make the applicable legal standard evident. *State v. Kyllo*, 166 Wn.2d 856, 864, 215 P.3d 177 (2009). When an incorrect standard and a correct standard are given that would leave the jury confused, reversal is required. *State v. Kyllo*, 166 Wn.2d at 864-65.

In Eli Gallegos' trial, jury instruction 10 stated that, to convict Eli Gallegos of criminal trespass, the jury must find "[t]hat the defendant knew that the entry [onto Elizabeth Sauer's property] or remaining [thereon] was unlawful." CP at 28. This

instruction echoes the applicable criminal statute, RCW 9A.52.080(1), that declares: "A person is guilty of criminal trespass in the second degree if he or she *knowingly enters or remains unlawfully* in or upon premises."  (Emphasis added.)

Jury instruction number 11 read, in part:

A person knows or acts knowingly or with knowledge with respect to a fact when he is aware of that fact.  *It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.*

CP at 29 (emphasis added).  As argued by Eli Gallegos and conceded by the State, jury instructions 10 and 11 cannot be reconciled as actual knowledge of the unlawfulness is required to convict for criminal trespass in the second degree.  More importantly, jury instruction 11 relieved the State from the duty to prove an element—that Gallegos subjectively knew he could not be present at Elizabeth Sauer's property on March 4, 2018.

The State argues that the instructional error was harmless.  A jury instruction that omits or misstates the law is deemed erroneous and reviewed under the constitutional harmless error standard.  *State v. Brown*, 147 Wn.2d 330, 344, 58 P.3d 889 (2002).  The record must demonstrate beyond a reasonable doubt that the verdict would have been the same without the error.  *State v. Brown*, 147 Wn.2d. at 341.

In the context of a jury instruction that omits or mistakes an element of the crime, the law presents a unique test as to harmless error.  Not only must the reviewing court be

16

convinced that the jury would have otherwise convicted the accused, the State must show

that the omitted element or misstated element was supported by "uncontroverted

evidence." *State v. Brown*, 147 Wn.2d 330, 341 (2002); *State v. Rivera-Zamora*, 7 Wn.

App. 2d 824, 828, 435 P.3d 844 (2019); *State v. Clark-El*, 196 Wn. App. 614, 620, 384

P.3d 627 (2016); *State v. Sublett*, 156 Wn. App. 160, 189-90, 231 P.3d 231 (2010), *aff'd*

*on other grounds*, 176 Wn.2d 58, 292 P.3d 715 (2012).  Washington borrows this rule

and may need to follow this rule based on United States Supreme Court precedent under

the due process clause.  *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L.

Ed. 2d 35 (1999).

The omitted crime element harmless error standard echoes the summary judgment

standard in civil proceedings, by which the movant must establish an entitlement to a

judgment based on undisputed evidence.  This harmless error standard imposes a higher

burden on the State than other harmless error standards that only require the State to

show overwhelming evidence in support of guilt.  The State might present reams of

compelling evidence of guilt, yet some evidence could still show a dispute of facts as to

an element of the crime charged.

The State astutely observes that the trial testimony uncontrovertibly showed that

Elizabeth Sauer told Eli Gallegos at least fifteen times he was not welcome at her

property.  The undisputed evidence established that, in February 2017, one year before

the date of the crime, Deputy Dan Brown informed Gallegos he was not welcome at the

17

Sauer resident and would be arrested on his return. The State emphasizes that, when Sergeant Michael Jordan arrested Gallegos on March 4, 2018, Gallegos conceded that one year earlier Deputy Brown told him to stay away from the Sauer home.

We consider the State's evidence to be compelling, if not overwhelming, evidence. But the evidence only establishes that, at some time before March 4, 2018, Eli Gallegos knew he should not be present on Elizabeth Sauer's property. The evidence does not necessarily establish that Gallegos knew he could not be present on March 4, 2018. More than one year had passed since someone had last told Gallegos not to return to the Sauer residence. Neither Deputy Dan Brown nor Elizabeth Sauer had expressly told Gallegos that he could never return to the home. According to Michael Jordan's testimony, Gallegos told Sergeant Michael Jordan, on March 4, that Deputy Brown told him a year earlier not to return to the property, but Gallegos never conceded to Jordan that Brown instructed him never to return. Gallegos never conceded that he knew he was still not allowed at Sauer's home.

We conclude that Eli Gallegos presented some contravening evidence as to his actual knowledge on March 4, 2018 that he would be trespassing if he visited Elizabeth Sauer's residence. Gallegos testified that he did not know he was no longer welcome on March 4.

The State accurately responds that Eli Gallegos' testimony as to a lack of knowledge was confusing and rambling. We agree. But the rule of harmless error does

18

not require that the accused present articulate evidence controverting an element of the crime. Otherwise, mumbling, garbling, stammering, or incoherent accused or defendants whose primary language is one other than English could not benefit from the harmful error protections.

We note that some evidence suggests that Eli Gallegos lingered, on Elizabeth Sauer's property, after Sauer told him to leave on March 4, 2018. Nevertheless, the State, in its brief, does not employ these facts to argue harmless error. Instead the State writes:

> In this case, the error was harmless beyond a reasonable doubt because the uncontroverted evidence was that: 1) the owner of the property told Mr. Gallegos fifteen to twenty times that he was not allowed on her property, 2) he was never invited to her property after being trespassed, 3) she never gave him any indication she was going to have the trespass lifted, 4) Sgt. Brown told Mr. Gallegos that he was trespassed and if he returned to the property he would be arrested and Mr. Gallegos said he understood, and 5) on the day of the incident Mr. Gallegos admitted that he remembered the conversation with Sgt. Brown about being trespassed.

Br. of Resp't at 16-17. Therefore, we do not analyze whether Sauer's testimony of lingering is uncontroverted. The State may not employ this testimony to assert harmless error because Sauer immediately went to her phone to call the police and did not look to see how much longer Gallegos remained on her property.

We reverse and remand for a new trial Eli Gallegos' conviction for criminal trespass in the second degree because the contradictory jury instructions were not harmless error.

VUCSA Fine

Eli Gallegos assigns three errors to the sentencing court's imposition of legal financial obligations. First, he contends that the trial court erred by not conducting a full inquiry into his indigency before imposing the $2,000 VUCSA fine when the record indicates he was indigent. He asks that this court either strike the fine or remand for an adequate inquiry. The State concedes that we should remand the imposition of legal financial obligations for further consideration by the trial court.

Under *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), trial judges have a statutory obligation to consider former RCW 10.01.160(3) at sentencing and make an individualized determination of the defendant's ability to pay discretionary legal financial obligations. *State v. Blazina*, 182 Wn.2d at 837. Nevertheless, this court has held that, in contrast, a fine does not require the trial court to conduct an inquiry into a defendant's ability to pay. *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015). This court has, however, strongly urged trial judges to consider the defendant's ability to pay before imposing fines. *State v. Clark*, 191 Wn. App. at 376.

The sentencing court imposed the VUCSA fine on Eli Gallegos pursuant to the Uniform Controlled Substances Act, chapter 69.50 RCW.

> On a second or subsequent conviction for violation of any of the laws listed in subsection (1) of this section, the adult offender must be fined two thousand dollars in addition to any other fine or penalty imposed. Unless the court finds the adult offender to be indigent, this additional fine may not be suspended or deferred by the court.

RCW 69.50.430(2). Subsection one, within the meaning of the statute, includes a conviction under RCW 69.50.4013. RCW 69.50.430(1). Division Three of this court has determined that the fine under RCW 69.50.430(2) is mandatory. *State v. Malone*, 193 Wn. App. 762, 764 n.2, 376 P.3d 443 (2016); *State v. Mayer*, 120 Wn. App. 720, 727, 86 P.3d 217 (2004). Nevertheless, on a finding of indigency, the trial court may exercise discretion to waive the fine. *State v. Mayer*, 120 Wn. App. at 727. The court determines indigency at the time of sentencing. *State v. Mayer*, 120 Wn. App. at 728.

Because we otherwise remand the prosecution to the trial court for a new trial on the charge of criminal trespass and, in turn, for resentencing, we ask the resentencing court to review Eli Gallegos' financial situation at the time of resentencing. In turn, we ask the court to assess whether to waive the VUCSA fine.

## Interest

Eli Gallegos next challenges the judgment and sentence's imposition of interest on the imposed legal financial obligations. House Bill 1783 eliminated the accrual of interest on nonrestitution legal financial obligations. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 724 (2018). The trial court did not impose any restitution in this case. The State concedes error. On remand, the resentencing court should remove interest on any financial obligations.

21

Antiattachment Clause

Eli Gallegos requests that the judgment and sentence should be revised to prohibit the collection of legal financial obligations from funds protected by the social security antiattachment statute. The federal antiattachment provision of the Social Security Act, 42 U.S.C. § 407(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Under this provision, federal law prohibits courts from ordering defendants to pay legal financial obligations if the person's only source of income is social security disability. *City of Richland v. Wakefield*, 186 Wn.2d 596, 609, 380 P.3d 459 (2016).

In *State v. Catling*, 2 Wn. App. 2d 819, 826, 413 P.3d 27 (2018), *aff'd in relevant part*, 193 Wn.2d 252, 438 P.3d 1174 (2019) the trial court imposed legal financial obligations on defendant Jason Catling. Catling's sole source of income was from social security benefits as he suffered from a debilitating defect which prevented him from working. This court held that the antiattachment provision prevents levying against social security disability proceeds, but it does not address the debt itself. The state Supreme Court affirmed and remanded to the trial court for it to revise the judgment and sentence and repayment order to indicate that legal financial obligations may not be

22

satisfied out of any funds subject to the Social Security Act's antiattachment statute. *State v. Catling*, 193 Wn.2d 252 at 826.

On remand, the sentencing court should revise the judgment and sentence and repayment order to state that funds protected under the antiattachment statute should not be used toward payment of legal financial obligations.

CONCLUSIONS

We affirm Eli Gallegos's conviction for possession of a controlled substance. We vacate his conviction for criminal trespass and remand this second charge for a new trial. We also remand for resentencing consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.

23