[No. 26458-3-I.   Division One.   November 4, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. EVERETT
BALDWIN, *Appellant*.

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

FORREST, J. — Everett Baldwin appeals his sentence, asserting that the court erred in finding delivery of a controlled substance and possession of a controlled substance not to be the same criminal conduct for purposes of calculating his offender score. He also appeals the imposition of $585 in costs.

On February 27, 1990, an undercover police officer was approached by Baldwin, who asked if he was "looking or selling". The officer replied that he was "looking" and Baldwin responded that he knew where to get some cocaine. Baldwin instructed the officer to wait there and returned shortly with another man, Richardson. Richardson told the officer that he knew someone who could get him cocaine. Richardson and Baldwin then looked for the contact person. They spotted him shortly. Richardson, Baldwin and the officer then began walking after that person. Richardson commented that they would catch up with the contact in the park. At that point, the officer refused to continue into the unlighted park.

The officer turned around and Baldwin followed him. Baldwin told the officer that he would get him some cocaine if he was given a "cut". Shortly, Richardson rejoined them and instructed a fourth man, named Slider, to go to the park and get the cocaine. Slider returned with the cocaine and the officer handed Richardson $25.

The officer then walked off and Baldwin followed asking for his "cut". The officer gave him a small amount of the cocaine.[1] Baldwin, Richardson and Slider were then arrested.

---

[1]This occurred one block from where the officer had given Richardson the money.

Upon trial Baldwin was found guilty of delivery of a controlled substance and possession of a controlled substance. At sentencing, Baldwin requested that the court find that both offenses constituted the same criminal conduct pursuant to RCW 9.94A.400(1)(a). The court declined and calculated the offender score accordingly.

The court chose to waive the Uniform Controlled Substances Act fine (VUCSA fine),[2] stating "I don't know how much more of a showing of indigency we need." However, the court did impose reimbursement of court costs in the amount of $85 and recoupment of attorney fees in the amount of $500. Subsequently, at the State's request, the court took judicial notice of the fact that Baldwin was able bodied and could pay the court assessments once released.

1. Did the court err in finding that the delivery and possession charges did not constitute the same criminal conduct for purposes of the offender score?

2. Did the court make the proper finding to enable it to impose court costs and attorney fees on the defendant?

### SAME CRIMINAL CONDUCT

██ Baldwin asserts that the trial judge is required to treat his conviction for delivery and his conviction for possession as the same criminal conduct because his overall intent was to possess cocaine. He contends that he participated in the delivery in order to put the undercover officer in possession and, hence, in a position to give cocaine to Baldwin as kind of a "tip" for having arranged the sale. We disagree. Under RCW 9.94A.400(1)(a), "same criminal conduct" is defined as two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.[3] Arguably, "criminal

---

[2] RCW 69.50.430(1) provides a $1,000 fine in addition to other penalties for violation of certain provisions of the Uniform Controlled Substances Act. The statute requires that the fine be imposed "[u]nless the court finds the person to be indigent".

[3] In 1987 the Legislature amended RCW 9.94A.400(1)(a) by adding this definition. Until then, "same criminal conduct" was undefined. The addition of this restrictive definition indicates the legislative intent that "same criminal conduct" be a narrow category.

intent" could be interpreted to mean the internal state of mind of the individual defendant, or could be interpreted to mean the specific intent which is required as an element of the crime charged.[4] The Supreme Court has rejected both approaches, formulating the following test:

> trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

*State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987). Although *Dunaway* declined to apply the 1987 amendment to RCW 9.94A.400(1)(a) retroactively, the holding has been treated as consistent with the amendment and an appropriate guide to ascertaining same criminal conduct.[5] Objectively viewed, the intent of delivery is to transfer the narcotics from one person to another usually, if not universally, with an expectation of benefit to the person effecting the delivery. Objectively viewed, the intent of possession[6] is to have the narcotic available and under the control of the possessor to use as he or she sees fit. These are plainly different criminal intents.

Baldwin urges that he, in fact, had only one intent, to possess cocaine, and that his participation in the delivery was merely an intermediate step to put the undercover officer in possession of cocaine so that the officer would be able, if he so chose, to deliver to Baldwin. The record does not support this scenario. Even if this scenario were established, Baldwin's argument utilizes the individual and personal intent that *Dunaway* forecloses from consideration. Objectively viewed, the reasonable explanation is that Bald-

---

[4]*State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987).

[5]*State v. Adame*, 56 Wn. App. 803, 810 n.6, 785 P.2d 1144, *review denied*, 114 Wn.2d 1030 (1990). We note, however, that while *Dunaway* treats same time and place as factors in evaluating the crimes as the same criminal conduct, the statute makes them essential prerequisites to such a finding. *State v. Rodriguez*, 61 Wn. App. 812, 812 P.2d 868 (1991).

[6]Ironically, intent to possess is not an element of the crime of possession. *See* RCW 69.50.401(a); *State v. Rodriguez, supra* at 817.

win intended to effect the delivery and to be compensated for his role in arranging the original sale. That having been accomplished, he took advantage of being in the officer's company to see if he could secure some cocaine by cadging it from the officer as a sort of "tip". The delivery was complete before the possession began. Indeed, possession was still problematical upon completion of the delivery.

■■ A finding of the same criminal conduct or a refusal to do so is reviewed for an abuse of discretion.[7] Choosing the more plausible objective view of a transaction and rejecting the less plausible is not an abuse of discretion. The trial court did not commit error in refusing to find that Baldwin's intent was the same and, hence, his crimes of possession and delivery did not constitute the same criminal conduct.

The State argues that time and place are also different in the two crimes. Since the intent is clearly not the same, we decline to decide how long a lapse of time and how much distance between the crimes would preclude a finding of same criminal conduct.

### FINANCIAL OBLIGATIONS

■ Relying on *State v. Hayes*[8] and *State v. Earls*[9] Baldwin asserts that this case must be remanded to the trial court for formal findings of fact as to his ability to pay the financial obligations imposed. We disagree. In light of *State v. Eisenman*,[10] *State v. Suttle*[11] and *State v. Curry*,[12] *Earls* and

---

[7]*State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440, *cert. denied*, ___ U.S. ___, 112 L. Ed. 2d 80, 111 S. Ct. 110 (1990).

[8]56 Wn. App. 451, 783 P.2d 1130 (1989).

[9]51 Wn. App. 192, 752 P.2d 402 (1988) (Division Three).

[10]62 Wn. App. 640, 810 P.2d 55, 817 P.2d 867 (1991) (no formal finding required to impose $170 in court costs and victim fund assessment because amount minimal).

[11]61 Wn. App. 703, 812 P.2d 119 (1991) (no finding required for $100 victim penalty assessment).

[12]62 Wn. App. 676, 814 P.2d 1252 (1991) (no finding required to impose $168 in court costs and a $70 victim penalty assessment).

*Hayes* can no longer be held to mandate findings of fact in every case imposing financial obligations.[13] In each, financial obligations were upheld in the absence of formal findings of fact. As to the costs of $85 imposed on Baldwin, we consider *Curry* dispositive.[14]

Baldwin, however, was ordered to pay $500 in recoupment of attorney fees which implicates his constitutional right to counsel.[15] As noted in *Curry*, different components of the financial obligations imposed on a defendant, such as attorney fees, court costs, and victim penalty assessments, require separate analysis.[16] Accordingly, we address the issue whether formal findings are required for recoupment of attorney fees even if not required for costs and assessments.

We first note that the statement in *Earls* that specific findings are required[17] is not supported by any citation to authority. Nor are any persuasive policy reasons advanced why such findings are necessary to adequately safeguard a defendant's rights. *State v. Earls, supra,* relies on *Fuller v. Oregon*[18] and *State v. Barklind*[19] to authorize recoupment of attorney fees with proper safeguards, but fails to recognize

---

[13]Insofar as our holding is inconsistent, we respectfully decline to follow Division Three's analysis in *State v. Earls*, 51 Wn. App. 192, 752 P.2d 402 (1988).

[14]"There is nothing in [RCW 10.01.160] . . . requiring that formal findings be entered to support the sentencing judge's decision to assess court costs. Given the protections contained in the statute itself, we are persuaded that the constitution does not require the judge to provide such added protection." *State v. Curry, supra* at 680.

[15]*Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974); *State v. Barklind*, 87 Wn.2d 814, 557 P.2d 314 (1976).

[16]*Curry*, at 679.

[17]"We hold that without specific findings, that part of the judgment and sentence assessing costs and attorney fees cannot stand." *Earls*, at 197.

[18]417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974).

[19]87 Wn.2d 814, 557 P.2d 314 (1976).

that they do not explicitly require formal findings of fact as a predicate for the imposition of financial obligations on a defendant.

*Barklind* was an attorney fee case. The opinion sustained the imposition of recoupment for attorney fees imposed prior to the adoption of RCW 10.01.160[20] because the trial court order satisfied the constitutional requirements of *Fuller* although the trial court did not make formal findings of fact. The court noted the passage of RCW 10.01.160 and held that the legislation met the constitutional standards of *Fuller*.[21] RCW 10.01.160 does not explicitly require formal findings. Instead, it requires only that the trial court "take account of" the relevant facts.

We are confirmed in this analysis because, as noted in *Curry* the meaningful time to examine the defendant's ability to pay is when the government seeks to collect the obligation.[22] RCW 10.01.160 provides, as did the statute upheld in *Fuller*, that at the time payment is to be enforced the defendant will not be held in default if such payment would impose a "manifest hardship" on the defendant or the defendant's family. The defendant may petition the court at any time for remission or modification of the payments on

---

[20]Former RCW 10.01.160(1)-(3) provides the guide to imposition of recoupment of attorney fees as well as costs:

"(1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law. Expenses incurred for serving of warrants for failure to appear and jury fees under RCW 10.46.190 may be included in costs the court may require a convicted defendant to pay.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

[21]"We note that the legislature has enacted a recoupment statute identical to the Oregon statute upheld in *Fuller*." *Barklind*, at 818.

[22]*Curry*, at 680.

this basis.[23] Through this procedure the defendant is entitled to judicial scrutiny of his obligation and his *present* ability to pay at the relevant time. In contrast, the inquiry at sentencing as to *future* ability to pay is somewhat speculative and does not necessarily threaten incrimination. As such, it does not impinge on or "chill" a defendant's right to counsel. Accordingly, we hold that formal findings of fact are not required for imposition of recoupment of attorney fees at sentencing.[24]

■ RCW 10.01.160(3) provides that "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." Here, the court did so. The presentence report contained the following statement, "Mr. Baldwin describes himself as employable, and should be held accountable for legal financial obligations normally associated with this offense." Baldwin made no objection to this assertion at the time of sentencing. Pursuant to RCW 9.94A.370(2) information contained in the presentence report may be used by the court if the defendant does not object to that information.[25] Therefore, when the presentence report establishes a factual basis for the defendant's future ability to pay and the defendant does not object, the requirement of inquiry into the ability to pay is satisfied.

Moreover, by imposing costs and attorney fees in the sum of $585 and declining to impose the VUCSA fine of $1,000, the court clearly has "taken into account" the defendant's ability and the "nature"[26] of the defendant's obligation. A

---

[23]RCW 10.01.160(4).

[24]We note that in *Barklind* the trial court's order provided that the "duty to make the payments . . . shall exist only so long as defendant has the present financial ability to pay". *Barklind*, at 815. The court held that this provision satisfied the *Fuller* requirement that payment be ordered only if the defendant " 'is or *will* be able to pay.' " *Barklind*, at 817.

[25]*State v. Southerland*, 43 Wn. App. 246, 250, 716 P.2d 933 (1986).

[26]In this context "nature" means the dollar amount.

$585 obligation to be paid over a period of 10 years is a reasonable obligation for an employable defendant.

██ The standard of review for the imposition of financial obligations has not been clearly articulated in our cases. However, it seems plain to us that the court's determination as to the defendant's resources and ability to pay is essentially factual and should be reviewed under the clearly erroneous standard.[27] The decision to impose recoupment of attorney fees requires the trial court to balance the defendant's ability to pay against the burden of his obligation. This is a judgment which requires discretion and should be reviewed for an abuse of discretion.[28]

Formal findings of fact are not required as a predicate for imposing financial obligations on a defendant. The record establishes that the trial judge took into account the financial resources of the defendant and the nature of the burden. Accordingly, we find no error or abuse of discretion in the imposition of the financial obligations of $585 on defendant Baldwin.

Affirmed.

GROSSE, C.J., and COLEMAN, J., concur.

---

[27]The inquiry is whether the court's determination is supported by the record. As such, it is like review of a trial court's reasons for imposing an exceptional sentence. Both are factual determinations and should be reviewed for clear error. See State v. Nordby, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986).

[28]This decision, like a trial court's decision as to the precise length of an exceptional sentence, is an exercise of discretion. As such, it should be reviewed for abuse of discretion. See State v. Oxborrow, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986).