IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30945-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JORGE ENRIQUE RODRIGUEZ, | ) | |
| | ) | |
| Appellant. | ) | |

ANTOSZ, J.* — Jorge Enrique Rodriguez appeals his conviction for felony violation of a no-contact order. He argues (1) the trial court erred by failing to instruct the jury that it had to be unanimous as to the specific act constituting the violation, and (2) inadequate evidence supports the trial court's finding that he has the current or future ability to pay his legal financial obligations. Additionally, in a statement of additional grounds for review (SAG), Mr. Rodriguez alleges sentencing error and inadequate representation of counsel. Finding no reversible error, we affirm.

---

* Judge John M. Antosz is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

## FACTS

During September 2011, Jorge Rodriguez and Diana Houck lived at his house at 115 North 7th Avenue, Pasco, Washington. On September 9, 2011, Mr. Rodriguez was arrested and charged for domestic violence assault involving Ms. Houck. The court subsequently issued a no-contact order prohibiting Mr. Rodriguez from coming within two blocks of his house and contacting Ms. Houck. On September 25, 2011, City of Pasco Police Officer Randall Roach responded to a domestic violence call from Ms. Houck. Officer Roach proceeded to 115 North 7th Avenue and found Mr. Rodriguez asleep at the residence. Officer Roach arrested Mr. Rodriguez for violation of the no-contact order. The State charged Mr. Rodriguez by amended information with felony violation of a no-contact order.

At trial, Mr. Rodriguez testified that after his September 9 arrest, he communicated with Ms. Houck about the possibility of her bailing him out of jail. Mr. Rodriguez also testified that on September 12, 2011, a police officer conducted a civil standby allowing Mr. Rodriguez to collect personal items from his house while Ms. Houck was present. As to the September 25, 2011 incident, he explained that Ms. Houck had permitted him to go to his house to give medicine to his dog because she was unable to do so. He also testified that he needed a place to stay after drinking with friends.

A jury found Mr. Rodriguez guilty as charged.

At sentencing, the court imposed a mid-range standard sentence. It also imposed $2,876.75 in legal financial obligations. The court made no oral inquiry or statement on Mr. Rodriguez's ability to pay. However, section 2.5 of the judgment and sentence stated:

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change.
> The court finds:
> [X] That the defendant is an adult and is not disabled and therefore has the ability or likely future ability to pay the legal financial obligations imposed herein.

Clerk's Papers (CP) at 12.

Mr. Rodriguez appeals, claiming the court erred in failing to give a unanimity instruction and in entering a finding on his ability to pay his legal financial obligations.

## ANALYSIS

Mr. Rodriguez first contends the trial court should have given a unanimity instruction because the conviction could have been based on several acts, which included (1) speaking to Ms. Houck, (2) going to the protected address, (3) and/or being found asleep in the house by police, with the jury potentially not being unanimous about any one of these alternatives.

3

The question of jury unanimity is an issue of constitutional magnitude that can be raised initially on appeal. CONST. art. I, § 21; RAP 2.5(a)(3); *State v. Fiallo-Lopez*, 78 Wn. App. 717, 725, 899 P.2d 1294 (1995). This assignment of error is reviewed de novo. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004).

A defendant may be convicted only when a unanimous jury concludes that the defendant committed the criminal act charged in the information. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). When the State presents evidence of multiple acts of similar misconduct, any one of which could form the basis of the count charged, the State must either elect which of these acts it relies on for a conviction or the trial court must instruct the jury that all 12 jurors must agree that the State has proved the same underlying act beyond a reasonable doubt. *State v. Coleman*, 159 Wn.2d 509, 511-12, 150 P.3d 1126 (2007); *Kitchen*, 110 Wn.2d at 411. This ensures a unanimous verdict on one criminal act. *Coleman*, 159 Wn.2d at 512. Where there is neither an election nor a unanimity instruction in a multiple acts case, a constitutional error occurs. *Coleman*, 159 Wn.2d at 512; *Kitchen*, 110 Wn.2d at 409, 411. This type of error requires a new trial unless shown to be harmless beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990).

4

The State correctly points out that no election or unanimity instruction is needed if the defendant's acts were part of a continuing course of conduct. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). It then asserts that the separate acts cited by Mr. Rodriguez constitute a continuing course of conduct because they involved the same victim, the same no-contact order, and occurred around the same time period. It argues these acts "represent a continuing course of conduct whereby [Mr. Rodriguez] reclaimed their residence for himself in violation of the no contact order." Resp't's Br. at 8.

Both sides overlook the fact that two of the separate acts occurred prior to the charging date. The charging document alleged that on or about September 25, 2011, Mr. Rodriguez, with knowledge that the Pasco Municipal Court had issued a no-contact order, knowingly violated its provisions. The State presented evidence that the Pasco Municipal Court issued a no-contact order prohibiting Mr. Rodriguez from having any contact with Ms. Houck or entering or remaining within two blocks of his house, and that subsequent to that order, on September 25, 2011, police found Mr. Rodriguez asleep at his house. The jury was then instructed that the relevant charging date was September 25, 2011. Instruction 10 stated: "(1) That on or about September 25, 2011, there existed a no-contact order applicable to the defendant; (2) That the defendant knew of the existence of this order; (3) That on or about said date, the defendant knowingly violated a provision of

this order." CP at 37. In view of the information and the jury instructions, the jury could not have considered the earlier incidents cited by Mr. Rodriguez because they occurred prior to the charging date. Accordingly, a unanimity instruction was not needed.

Citing *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), Mr. Rodriguez next argues that the trial court erred by finding that he had the current or likely future ability to pay the legal financial obligations imposed by the court because nothing in the record supported the finding. In his reply brief, he specifies that he only objects to the discretionary legal financial obligations of $1,676.75 in court costs.

The distinction between mandatory and discretionary legal financial obligations is important. The legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing mandatory legal financial obligations. For victim restitution and assessments, DNA[1] collection fees, criminal filing fees, and appellate costs, a defendant's ability to pay is not considered. *State v. Curry*, 62 Wn. App. 676, 680, 814 P.2d 1252 (1991), *aff'd*, 118 Wn.2d 911, 829 P.2d 166 (1992); *State v. Thompson*, 153 Wn. App. 325, 336, 223 P.3d 1165 (2009); RCW 10.73.160(3). However, unlike mandatory obligations, if a court imposes discretionary legal financial obligations, it must consider the defendant's present or likely future ability to pay. *State v. Lundy*, 176 Wn.

---

[1] Deoxyribonucleic acid.

6

App. 96, 103, 308 P.3d 755 (2013). Thus, before making such a finding, the trial court must "'[take] into account the financial resources of the defendant and the nature of the burden'" imposed by the legal financial obligations. *Bertrand*, 165 Wn. App. at 404 (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)).

We review a trial court's determination of an offender's financial resources and ability to pay under the clearly erroneous standard. *Bertrand*, 165 Wn. App. at 404 n.13 (quoting *Baldwin*, 63 Wn. App. at 312). A finding is clearly erroneous if, although there is some evidence to support it, review of all of the evidence leads to a "definite and firm conviction that a mistake has been committed." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

While the court did not address Mr. Rodriguez's ability to pay during the sentencing hearing, its finding is supported by the record because Mr. Rodriguez testified that he owns a house. The State's burden for establishing whether a defendant has the present or likely future ability to pay discretionary legal financial obligations is a low one. In *Baldwin*, it was met by a single sentence in a presentence report in which Mr. Baldwin described himself as "employable." *Baldwin*, 63 Wn. App. at 311. Thus, evidence that Mr. Rodriguez owns a house adequately supports the finding in the judgment and the sentence that he had the ability or likely future ability to pay the ordered legal financial

7

obligations.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his pro se SAG, Mr. Rodriguez contends "there is confusion" regarding his judgment and sentence, but fails to specify the nature of the alleged error. He also contends that he "needs to set up an [sic] court date to explain his evidence for his case" because "counsel did not call for any witnesses and didn't show all the evidence for his case." SAG at 1. He claims the evidence would show that an assault charge was dropped and attaches a document from the Pasco Municipal Court indicating an assault charge was dismissed on December 30, 2011, due to witness unavailability.

These claims either involve matters outside the record, *State v. McFarland*, 127 Wn.2d 322, 335, 338 n.5, 899 P.2d 1251 (1995) (matters outside record must be raised in personal restraint petition), or are insufficiently argued. RAP 10.10(c). Although RAP 10.10(c) states that reference to the record and citation to authorities are not required in an SAG, the rule also states that the appellate court will not consider the SAG for review if it does not inform the court of the nature and occurrence of the alleged errors. Here, Mr. Rodriguez fails to adequately describe the nature and occurrence of any alleged errors as required by RAP 10.10(c). Accordingly, we are unable to address his claims.

8

No. 30945-2-III
*State v. Rodriguez*

We affirm the trial court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Antosz, J.P.T.

WE CONCUR:

_____       _____
Siddoway, A.C.J.                      Fearing, J.