# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of: | No. 47796-3-II |
| ARTHUR LEWIS DOVE, | PUBLISHED OPINION |
| Petitioner. | |

MAXA, J. – In this personal restraint petition (PRP), Arthur Dove seeks relief from personal restraint in the form of a discretionary legal financial obligation (LFO) imposed for his 2014 conviction for second degree child rape. Dove argues that the trial court erred by imposing a discretionary LFO without making an individualized inquiry into his ability to pay as required in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

But Dove did not file his PRP until more than a year after his judgment became final. RCW 10.73.090(1) states that no PRP can be filed more than one year after the petitioner's judgment becomes final unless the judgment and sentence is invalid on its face or unless one of six exceptions in RCW 10.73.100 applies.

We hold that the one-year time bar applies to Dove's PRP because (1) under RCW 10.73.090(1), his judgment and sentence is valid on its face regarding the trial court's imposition of a discretionary LFO; and (2) *Blazina* did not make a significant, material change in the law as

required for application of the exception under RCW 10.73.100(6).[1]  Accordingly, we dismiss

Dove's PRP as time barred.

## FACTS

In February 2014, Dove pled guilty to second degree child rape.  The trial court entered a

judgment and sentence on March 21, 2014.  The trial court imposed three mandatory LFOs – a

$500 crime victim assessment, a $100 DNA fee, a $200 criminal filing fee – and a discretionary

LFO of $500 for court-appointed attorney fees and defense costs.  The judgment and sentence

contained a preprinted provision stating that the sentencing court had considered Dove's present

and future ability to pay LFOs and found that Dove had the present or likely ability to pay the

LFOs imposed.  However, the report of proceedings shows that the trial court did not actually

assess Dove's ability to pay.

Because Dove did not appeal his sentence, the judgment and sentence became final on

the date of entry – March 21, 2014.  RCW 10.73.090(3)(a).  On July 15, 2015, more than a year

later, Dove filed this PRP.

## ANALYSIS

Dove argues that the one-year time bar does not apply because (1) based on the "valid on

its face" requirement in RCW 10.73.090(1), the trial court's imposition of LFOs without

assessing his ability to pay was beyond its statutory authority and renders his judgment and

---

[1] RAP 16.4(d) also states that we can grant relief by PRP only if "other remedies which may be available to petitioner are inadequate under the circumstances."  The State argues that Dove's PRP is barred because a motion to remit LFOs under RCW 10.01.160(4) is an available, adequate remedy.  Because we dismiss on other grounds, we do not address this argument.

sentence invalid on its face; and (2) based on the exception in RCW 10.73.100(6), *Blazina* made a significant, material change in the law that applies retroactively to his case. We disagree.

A.    LEGAL PRINCIPLES

1.    Standards for PRPs

A PRP is not a substitute for a direct appeal, and the availability of collateral relief is limited. *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 10, 84 P.3d 859 (2004). "Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

RAP 16.4 states the requirements for obtaining relief through a PRP. RAP 16.4(a) provides,

> Except as restricted by section (d), the appellate court will grant appropriate relief to a petitioner if the petitioner is under a "restraint" as defined in section (b) and the petitioner's restraint is unlawful for one or more of the reasons defined in section (c).

Under RAP 16.4(b), a petitioner is under restraint if the petitioner has limited freedom, is confined, is subject to imminent confinement, or is "under some other disability resulting from a judgment or sentence in a criminal case."[2] In addition, to be entitled to relief on a PRP, a petitioner must establish by a preponderance of the evidence that there was a constitutional error that resulted in actual and substantial prejudice or that there was a nonconstitutional error involving a fundamental defect that inherently results in a complete miscarriage of justice. *Coats*, 173 Wn.2d at 132.

---

[2] The State does not argue that "under restraint" does not include the imposition of LFOs. Therefore, we do not address this issue.

2.    One-Year Time Bar

RCW 10.73.090(1) states that no PRP can be filed more than one year after the petitioner's judgment becomes final if the judgment and sentence is "valid on its face." This means that the one-year time bar is inapplicable if the sentencing court commits an error that renders the judgment invalid on its face. *See Coats*, 173 Wn.2d at 135.

RCW 10.73.100 provides six exceptions to the one-year time bar for PRPs. The exception at issue here is stated in RCW 10.73.100(6), which applies when there has been a "significant change in the law" that is "material to the . . . sentence" and a court determines that "sufficient reasons exist to require retroactive application" of the changed law.

3.    Standard of Review

When a PRP raises pure questions of law, we review those questions de novo. *Coats*, 173 Wn.2d at 133. Similarly, we review issues of statutory interpretation de novo. *State v. Franklin*, 172 Wn.2d 831, 835, 263 P.3d 585 (2011).

The primary goal of statutory interpretation is to determine and give effect to the legislature's intent, which we determine by looking to the plain language of the statute. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). To discern legislative intent we focus on the plain meaning of the statutory language, considering the text of the provision at issue, the context of the provision within the statute, related provisions, and the statutory scheme as a whole. *Id.* If the plain meaning of a statute is unambiguous, we must apply that plain meaning without further construction. *Id.*

No. 47796-3-II

B.    IMPOSITION OF DISCRETIONARY LFOS

A sentencing court has authority to impose two types of LFOs: mandatory and discretionary. The trial court here imposed both types. Dove challenges only the trial court's imposition of a discretionary LFO without assessing his ability to pay.

RCW 10.01.160(1)[3] states that the sentencing court "may" require the defendant to pay "costs." Under RCW 10.01.160(2), these costs are expressly limited to "expenses specially incurred by the state in prosecuting the defendant." *See State v. Smits*, 152 Wn. App. 514, 521, 216 P.3d 1097 (2009). Court-appointed attorney fees and defense costs are specially incurred by the State in prosecuting the defendant and therefore constitute costs under RCW 10.01.160.[4] *See id.* at 519 (stating that RCW 10.01.160 allows courts to require defendants to pay costs, including fees for court appointed counsel). Use of the term "may" in RCW 10.01.160(1) means that the trial court has discretion whether to impose costs under that statute. *See State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992) (holding that the imposition of costs is within the sentencing court's discretion).

RCW 10.01.160(3) states that the sentencing court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them." In *Blazina*, the Supreme Court held that RCW 10.01.160(3) requires the sentencing court to make an individualized inquiry into a

---

[3] RCW 10.01.160 has been amended since the events of this case transpired. However, these amendments do not impact the statutory language relied on by this court. See LAWS OF 2015, 3d Spec. Sess., ch. 35, § 1. Accordingly, we do not include the word "former" before RCW 10.01.160.

[4] Former RCW 9.94A.030(30) (2012) defines LFOs as a sum of money that is ordered by a Washington superior court for legal financial obligations, including but not limited to, court-appointed attorney fees and defense costs.

5

defendant's current and future ability to pay before imposing discretionary LFOs. 182 Wn.2d at 838. The court emphasized that in order to comply with RCW 10.01.160(3), the sentencing court must do more than "sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.*

C.      "VALID ON ITS FACE" REQUIREMENT – RCW 10.73.090(1)

Dove argues that the one-year time bar of RCW 10.73.090(1) does not apply because the trial court's judgment imposing a discretionary LFO was invalid on its face. We disagree.

1.    Legal Principles

Under RCW 10.73.090(1), no PRP can be filed more than one year after the petitioner's judgment becomes final unless the judgment is invalid on its face. The general rule is that a sentence is invalid on its face if the sentencing court lacked or exceeded its statutory authority to impose the sentence. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 593, 316 P.3d 1007 (2014).

In *Coats*, the court emphasized that in making the facial validity determination, it historically has not limited its review to the four corners of the judgment and sentence. 173 Wn.2d at 138. Instead, the court has considered "documents that reveal some fact that shows the judgment and sentence is invalid on its face because of legal error." *Id.* at 138-39. On the other hand, the court noted that it has not considered "trial rulings, motions, or jury instructions when they reflect on fair trial issues and not the validity of the judgment and sentence." *Id.* at 140-41. In summary, the court stated:

> Taken together, we have found invalidity based upon charging documents, verdicts, and plea statements of defendants on plea of guilty. We have not rested our decision on jury instructions, trial motions, and other documents that relate to whether the defendant received a fair trial.

6

No. 47796-3-II

*Id.* at 140.[5]

 The Supreme Court elaborated on these statements in *In re Personal Restraint of Carrier*,

173 Wn.2d 791, 272 P.3d 209 (2012). After discussing *Coats*, the court stated:

> Our precedent should not be read to impose a bright-line rule or an exhaustive list
> of documents that we may consider in determining whether a judgment and
> sentence is "valid on its face." RCW 10.73.090(1). Rather, it permits consideration
> of documents that bear on the trial court's authority to impose a valid judgment and
> sentence.

*Carrier*, 173 Wn.2d at 800.

 2. Facial Validity Analysis

 Dove argues that his judgment and sentence is invalid on its face because the trial court

did not have authority to impose LFOs without making an individualized inquiry into his ability

to pay. We agree that a sentencing court exceeds its statutory authority by imposing costs under

RCW 10.01.160(1) without assessing the defendant's ability to pay those costs. But here, the

judgment and sentence expressly states that the trial court *did* consider Dove's ability to pay.

Therefore, the sentence *on its face* reflects that the sentencing court acted with statutory

authority.

---

[5] The term "on its face" in RCW 10.73.090(1) suggests that a court should strictly limit its
review to the four corners of the judgment and sentence and the applicable law. Chief Justice
Madsen has advocated for this interpretation. *E.g.*, *In re Pers. Restraint of Scott*, 173 Wn.2d
911, 923, 271 P.3d 218 (2012) (Madsen, C.J., concurring and dissenting in part) ("A court should
not look behind the judgment and sentence and examine a charging document, special verdict
form, or any other part of a petitioner's case record to determine whether some invalidity exists
that is not apparent on the face of the judgment and sentence.") And this interpretation seems
consistent with some Supreme Court cases. *E.g.*, *In re Pers. Restraint of Clark*, 168 Wn.2d 581,
585, 230 P.3d 156 (2010) (stating that "[a] judgment and sentence is not valid on its face when
the judgment and sentence, without further elaboration, evidences an error"). However, the
Supreme Court has not adopted this approach.

7

####a. Statutory Authority to Impose Discretionary LFOs

Under RCW 10.01.160(1), a sentencing court has general authority to require a defendant to pay costs. But RCW 10.01.160(3) further states that "[t]he court *shall not* order a defendant to pay costs unless the defendant is or will be able to pay them." (Emphasis added.) In making this determination, the sentencing court must "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3).

So in determining a sentencing court's authority to impose costs in a particular case, RCW 10.01.160(1) must be read in conjunction with RCW 10.01.160(3). Under the plain language of these provisions, a sentencing court does not have authority – the statute states "*shall not*" – to order a defendant to pay costs unless the defendant is or will be able to pay them after taking into account the defendant's financial resources. RCW 10.01.160(3) (emphasis added). Therefore, based on the unambiguous statutory language, a sentencing court exceeds its statutory authority in a particular case by imposing costs under RCW 10.01.160(1) without assessing the defendant's current and future ability to pay those costs.[6]

####b. Language of Judgment and Sentence

Dove argues that the trial court here did not have authority to impose discretionary LFOs because it did not make an individualized inquiry into his ability to pay as *Blazina* requires. But

---

[6] Division Three of this court seemed to reach the opposite conclusion in *In re Personal Restraint of Flippo*, 191 Wn. App. 405, 362 P.3d 1011 (2015), *review granted*, 185 Wn.2d 1032 (2016). The court concluded that "[t]he LFOs imposed on Mr. Flippo were all authorized by statute" and therefore held that the petitioner's judgment and sentence was not invalid on its face. *Id.* at 413. But the fact that a sentencing court has *general* authority to impose discretionary LFOs is not determinative because RCW 10.01.160(3) expressly and unambiguously prohibits imposition of discretionary LFOs unless the defendant has the ability to pay them.

the language of the judgment and sentence states otherwise. The judgment and sentence includes

the following "boilerplate" provision regarding LFOs:

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein.

Clerk's Papers (CP) at 41. *On its face*, this provision states that the trial court did assess Dove's

ability to pay and therefore establishes that the trial court had statutory authority under RCW

10.01.160(1) and (3) to impose discretionary LFOs.

Dove points out that despite the language of the judgment and sentence, the trial court did

not in fact make an individualized inquiry into his ability to pay discretionary LFOs. In other

words, he claims that the report of proceedings is insufficient to support the trial court's finding

regarding his ability to pay LFOs. He argues that under *Coats*, we can consider the report of

proceedings of the sentencing hearing to determine whether the record supports the sentencing

court's boilerplate finding regarding his ability to pay. Because the report of proceedings does

not support that finding, Dove argues that we must find that the sentencing court did not have

statutory authority to impose discretionary LFOs and therefore that the judgment and sentence

was invalid on its face.

As discussed above, Supreme Court cases confirm that appellate courts evaluating facial

validity can consider certain documents to determine whether a sentencing court had authority to

impose a particular sentence. *Carrier*, 173 Wn.2d at 800; *Coats*, 173 Wn.2d at 138-41. But no

case holds that a court can find facial invalidity based on a review of the report of proceedings

from a sentencing hearing. And no case allows a court to find facial invalidity based on a

determination that the report of proceedings from the sentencing hearing does not support an express finding that the sentencing court made on the face of the judgment and sentence.

Dove relies on *Blazina*'s holding that a sentencing court must do more than sign a judgment and sentence with a boilerplate finding in order to comply with RCW 10.01.160(3). *See Blazina*, 182 Wn.2d at 838. However, this holding does not address facial invalidity. The court in *Blazina* correctly noted that entry of a judgment and sentence containing a boilerplate finding that the sentencing court assessed the defendant's ability to pay LFOs does not show that the court in fact made such an assessment. But inclusion of a boilerplate finding also does not necessarily mean that the sentencing court failed to make an adequate assessment. Therefore, on the face of the judgment and sentence here, there is no way to conclude that the trial court did not make an individualized inquiry into Dove's ability to pay.

*Blazina* stands for the proposition that whether the trial court complied with RCW 10.01.140(3) depends on whether there is substantial evidence in the record to support the boilerplate finding in the judgment and sentence regarding ability to pay LFOs. But *Blazina* involved a direct appeal, not a PRP subject to the statutory time bar. The court in *Blazina* did not hold that inclusion of a boilerplate finding regarding the defendant's ability to pay renders the judgment and sentence invalid on its face.

c.   Conclusion

Although a sentencing court has general authority to impose discretionary LFOs, a sentencing court does not have statutory authority to impose discretionary LFOs in a particular case without assessing the defendant's ability to pay. But the judgment and sentence here expressly stated that the trial court did consider Dove's financial circumstances and found that he

did have the ability to pay discretionary LFOs. Whether or not the record actually supports the trial court's finding is not a question of facial invalidity. Therefore, we hold that Dove's judgment and sentence was valid on its face and the one-year time bar precludes his PRP unless an exception applies.

D.    CHANGE IN THE LAW EXCEPTION – RCW 10.73.100(6)

Dove argues that the exception to the one-year time bar in RCW 10.73.100(6) applies because *Blazina* constituted a significant change in the law that should be applied retroactively. We disagree.

1.    Legal Principles

Under RCW 10.73.100(6), a petitioner must satisfy three conditions for the "significant change in the law" exception to the one-year time bar to apply: (1) a significant change in the law (2) that is material and (3) that the court determines should be applied retroactively. *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016). A significant change in the law occurs "when an intervening appellate opinion overturns a prior appellate decision that was determinative of a material issue." *Id.* "Conversely, an intervening appellate decision that 'settles a point of law without overturning prior precedent' or 'simply applies settled law to new facts' does not constitute a significant change in the law." *Id.* at 114-15 (quoting *In re Pers. Restraint of Turay*, 150 Wn.2d 71, 83, 74 P.3d 1194 (2003)).

One test for whether an intervening decision represents a significant change in the law is whether the petitioner could have asserted the same argument as in the PRP before publication of the decision. *Miller*, 185 Wn.2d at 115.

No. 47796-3-II

  2. Change in the Law Analysis

  In 1976 the legislature enacted RCW 10.01.160(3), which stated:

> The court shall not sentence a defendant to pay costs unless the defendant is or will
> be able to pay them. In determining the amount and method of payment of costs,
> the court shall take account of the financial resources of the defendant and the
> nature of the burden that payment of costs will impose.

LAWS OF 1975-76, 2d Ex. Sess, ch. 96, § 1. The only change in the statute since that time has

been replacing "sentence" with "order" in the first line. LAWS OF 2007, ch. 367, § 3. For 40

years this statute has unambiguously required the sentencing court to determine if the defendant

can or will be able to pay costs before imposing them. *Blazina* did not overturn a prior appellate

decision on the imposition of discretionary LFOs by providing some new interpretation of RCW

10.01.160(3). Instead, the Supreme Court simply confirmed what RCW 10.01.160(3) always has

provided. 182 Wn.2d at 837-38. As a result, a PRP petitioner could have made the same

argument Dove makes here even before *Blazina* was issued.

  Division Three addressed this issue in *In re Personal Restraint of Flippo*, 191 Wn. App.

405, 410-11, 362 P.3d 1011 (2015), *review granted*, 185 Wn.2d 1032 (2016). The court stated:

> *Blazina*'s primary holding that the record must reflect the sentencing judge's
> individualized inquiry of the defendant's current and future ability to pay before
> imposing discretionary LFOs (as opposed to merely entering a boilerplate finding
> on the judgment and sentence) only confirms, and does not alter, what has always
> been required of the sentencing court under RCW 10.01.160(3) – a statute that was
> enacted in 1976 and has remained unchanged.

*Id.* Therefore, the court held that *Blazina* was not a significant change in the law for the

purposes of the time bar exception in RCW 10.73.100(6). *Id.* at 412. We agree with this

analysis.

12

While Dove admits that *Blazina* did not announce a new rule, he argues that *Blazina* represented a significant change in the law because it altered the standard trial court procedures of imposing LFOs using boilerplate language without inquiring into a defendant's ability to pay. We acknowledge that *Blazina* may have changed the way counsel and trial courts *viewed* the existing law. But that does not mean *Blazina* actually changed the law.

The Supreme Court in *Miller* expressly rejected a similar argument. 185 Wn.2d at 115-16. In *Miller*, the defendant argued that *In re Personal Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007), represented a significant change in the law because it rejected practitioners' erroneous belief, which had been relied on for years, that a sentencing court was required without exception to impose consecutive sentences for serious violent offenses. *Miller*, 185 Wn.2d at 115-16. The court found this argument unpersuasive, holding that (1) "a significant change in the law" contemplates a decision that overturns a prior appellate decision, and (2) *Mulholland* did not overturn a prior appellate decision but instead interpreted the statute at issue for the first time. *Id.* The court emphasized that RCW 10.73.100(6) applies only if the law itself, not counsel's understanding of the law, has changed. *Id.* at 116.

As in *Miller*, *Blazina* did not overturn an appellate decision on LFOs. Instead, it interpreted the substantive requirements of RCW 10.01.160(3) for the first time. Therefore, *Blazina* did not represent a significant change in the law under RCW 10.73.100(6).

Dove also argues that *Blazina* represented a significant change in the law on whether a challenge to LFOs is ripe before the State seeks to collect them. This court held in *State v. Lundy* that LFO challenges are not ripe until the State attempted to enforce LFO orders. 176 Wn. App. 96, 108-09, 308 P.3d 755 (2013). *Blazina* stated in a footnote – without mentioning

*Lundy* – that a challenge to LFOs is ripe for review even before the State attempts to collect them. 182 Wn.2d at 832 n.1. Even though changes in the law typically are not announced in footnotes, this footnote may represent a change in the law regarding ripeness.

We do not need to decide this issue. Even if *Blazina* changed the law on ripeness, the record does not show that this is a *material* change. This change potentially could be material only if the State had not attempted to collect the discretionary LFO during the one-year period after his judgment and sentence was final and Dove therefore was prevented from challenging the LFO in a timely PRP. But Dove's judgment and sentence stated that LFO payments would commence immediately and that he was required to report to the clerk's office within 24 hours to set up a payment plan.

We hold that *Blazina* did not make a significant, material change in the law and therefore that the RCW 10.73.100(6) exception to the one-year time bar is inapplicable.

## CONCLUSION

The one-year time bar applies to Dove's PRP regarding the discretionary LFO because the judgment and sentence is valid on its face and *Blazina* does not represent a significant change in the law regarding imposition of discretionary LFOs. Accordingly, we dismiss Dove's PRP as time barred.

MAXA, J.

I concur:

JOHANSON, J.

No. 47796-3-II

BJORGEN, C.J. (dissenting) —

I.

Through tattered clothes great vices do appear;
Robes and furred gowns hide all. Plate sin with gold,
And the strong lance of justice hurtless breaks;
Arm it in rags, a pigmy's straw does pierce it.

*King Lear*, Act 4, Scene 6, William Shakespeare.

Our progress in justice is measured in large part by our progress in putting the lie to Lear's words. Perhaps the prime current example of that fitful struggle is our evolving view of legal financial obligations (LFOs).

*State v. Blazina*, 182 Wn.2d 827, 835-37, 344 P.3d 680 (2015), and the studies it cites recognized that the exaction of LFOs from the indigent and near indigent forges in many cases a lingering debt that impedes rehabilitation and reentry into civil society. In Washington, LFO debt is charged interest at 12 percent per year and may be subject to collection fees when not paid on time. *Blazina*, 182 Wn.2d at 836. At this rate, those able only to pay $25 per month, for example, will actually owe more 10 years after conviction than when first assessed. *Id*. at 836. Those with scant means, thus, may face a growing, seemingly intractable debt long after their punishment has been served, both chaining them to the continuing jurisdiction of criminal court and tightening financial straits that may tempt further crime. Those with the means, in contrast, may redeem themselves from debt and jurisdiction almost at will. A starker illustration of Lear's indictment is hard to find.

15

No. 47796-3-II

In Washington, though, gold weighs less in the scales after *Blazina*. In that decision, our Supreme Court held that in implementing the requirements of RCW 10.01.160(3)[7] for discretionary LFOs,

> the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . ., such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

*Blazina*, 182 Wn.2d at 838.

Arthur Dove was assessed a discretionary LFO almost a year before *Blazina* issued and without the determination of his ability to pay required by that decision. Dove filed this personal restraint petition (PRP) on July 15, 2015, about four months after *Blazina*, but one year and three months after his sentence became final.

As the majority points out, Dove's PRP may be entertained only if it falls within one of the exceptions to the one-year time bar. Among these is the exception of RCW 10.73.100(6), covering situations when there has been a "significant change in the law" that is "material to the . . . sentence" and a court determines that "sufficient reasons exist to require retroactive application" of the changed law. This exception opens the sole passage to a just result when, in justice, a change in the law ought to be applied to those sentenced before the change was effective. As such, this exception ought to be given ample breathing room. For the reasons set out below, I believe *Blazina* constitutes just such a change in the law affording Dove dispensation from the time bar. For that reason, I dissent.

---

[7] RCW 10.01.160 was amended in 2015. The amendment does not affect the issues in this case.

16

II.

In describing the state of the law before *Blazina*, one must begin with RCW 10.01.160(3), which provided at the time of that decision that

> [t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

Thus, *Blazina* did not change the law by requiring some determination of ability to pay or by requiring the sentencing court to take financial resources and the burden created into account to some extent. The decision profoundly changed the law, though, in the substance of that determination and the way in which it must be made.

Before *Blazina*, a trial court was "prohibited from imposing legal financial obligations only when it appears from the record that there is no likelihood that the defendant's indigency will end." *State v. Lundy*, 176 Wn. App. 96, 99, 308 P.3d 755 (2013). This standard was consistent with the Supreme Court's statement in *State v. Curry*, 118 Wn.2d 911, 915, 829 P.2d 166 (1992), that one of the requirements of a constitutionally permissible costs and fee system is that "[a] repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end." *Lundy* described the State's burden in showing ability to pay discretionary LFOs as "a low one." 176 Wn. App. at 106. To illustrate this burden, *Lundy* pointed to the decision in *State v. Baldwin*, 63 Wn. App. 303, 313, 818 P.2d 1116 (1991), *amended*, 837 P.2d 646 (1992), which held that a single sentence in a presentence report, "Mr. Baldwin describes himself as employable, and should be held accountable for legal financial obligations normally associated with this offense," was sufficient. *Lundy*, 176 Wn. App. at 106.

17

*Baldwin*, in turn, characterized RCW 10.01.160 as requiring only that the trial court "take account of" the relevant facts in imposing LFOs. *Baldwin*, 63 Wn. App. at 310. *Baldwin* found this requirement to be met merely because the court had imposed costs and attorney fees in the sum of $585, but declined to impose the fine of $1,000 for violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. *Id*. at 311.

*Blazina* put an end to this flaccid interpretation of RCW 10.01.160. Now, instead of relieving a defendant from LFOs only if there is no likelihood indigency will ever end, *Blazina* directs courts to the different ways of establishing indigency in GR 34 and holds that "if someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839. *Blazina* also ended the sway of the previous "low" burden imposed by RCW 10.01.160 in determining ability to pay. Now, instead of *Baldwin*'s mirage-like requirement to "take account" of "relevant facts" in the most cursory way, *Blazina* demands that the record "reflect that the sentencing judge made an individualized inquiry into the defendant's current and future ability to pay." *Blazina,* 182 Wn.2d at 839. In making this inquiry, it is no longer sufficient merely to impose one assessment but not another, as in *Baldwin*. Rather, in addition to obvious criteria like income and assets, a court must in fact consider matters such as incarceration and a defendant's other debts, including restitution, when determining ability to pay. *Id*. *Blazina* also ended reliance on the common expedient virtually invited by the prior case law, a boilerplate finding that the court engaged in the required inquiry. *Id*. Now, the record must show that the court actually did so.

Finally, *Blazina* modified what would seem to be the voice of the plain language of RCW 10.01.160(3). As noted, that provision stated that "[a] court shall not order a defendant to pay

costs unless the defendant is or will be able to pay them." RCW 10.01.160(3). This is equivalent to stating that a court may order costs if the defendant is currently able to pay *or* if the defendant will be able to pay in the future. *Blazina* transformed this from a disjunctive choice to a conjunctive command through its requirement that the record reflect "an individualized inquiry into the defendant's current *and* future ability to pay." *Blazina*, 182 Wn.2d at 839 (emphasis added). No more may a court fulfill its obligation through one or the other inquiry.

These changes are significant and material for purposes of the time-bar exception in RCW 10.73.100(6), whether considered on their face or against the standards of *State v. Miller*, 185 Wn.2d 111, 371 P.3d 528 (2016). *Miller* specifies that the "significant change in the law" exemption in RCW 10.73.100(6) applies when an intervening appellate decision overturns a prior appellate decision that was determinative of a material issue, but is not met by an intervening appellate decision that settles a point of law without overturning prior precedent or simply applies settled law to new facts. *Miller*, 185 Wn.2d at 114-15. As shown above, *Blazina* contradicts and thus overturns central aspects of a number of prior decisions, including *Lundy*, *Baldwin*, and *Curry*. Under this basic characterization in *Miller*, it is a significant change in the law.

*Miller* also made clear that to work a significant change in the law, a decision must do more than dispel dicta or alter the ordinary practitioner's understanding of the law. *Miller*, 185 Wn.2d at 116. The aspects of prior decisions that were quelled by *Blazina*, discussed above, were not peripheral to those decisions or their holdings. Rather, they went to the heart of the required inquiry of ability to pay, and thus to the heart of the holdings of those decisions. *Blazina* did not merely dispel dicta.

19

On the other hand, *Blazina* certainly altered the ordinary practitioner's understanding of the law, but that is the inevitable result of any major change in the law. In fact, the more significant the change, the deeper the effect on practitioners' understanding. The key, rather, is whether the intervening decision changed prior law. If it did, as here, the effect on practice is beside the point.

*Miller* also counsels that one test to determine whether an intervening case represents a significant change in the law is whether the defendant could have argued this issue before publication of the decision. *Miller*, 185 Wn.2d at 116. This test cannot be used as a litmus, though, since it is often possible to make nonfrivolous arguments that a decision be overturned. If this test were conclusive, then *Brown v. The Board of Education of Topeka, Shawnee County, Kansas*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954), would not be deemed a significant change in the law, since similar arguments could have been raised before 1954 as *Plessy v. Ferguson*, 163 U.S. 537, 16 S. Ct. 1138, 41 L. Ed. 256 (1896), *overruled by Brown*, 347 U.S. 483 (1954), was eroded.

*Miller*'s basic guidance points in one direction: the changes worked by *Blazina* did not just disturb prior practice, but significantly changed the law, both substantive and procedural, governing discretionary LFOs. These changes were material, because they elevated the showing needed to impose discretionary LFOs. Dove's discretionary LFO, in fact, would not have passed muster under *Blazina*, because, as the majority points out, the record shows that the sentencing court did not actually assess Dove's ability to pay.[8]

---

[8] Perhaps the most obvious change made by *Blazina* was its modification of prior ripeness doctrine by allowing a defendant to challenge ability to pay LFOs before enforcement. As the majority points out, though, Dove's judgment and sentence stated that LFO payments would

Finally, for the exception of RCW 10.73.100(6) to apply, a court must determine that "sufficient reasons exist to require retroactive application" of the changed law. All the potential trapdoors in LFO systems noted above and described more fully in *Blazina* await those sentenced before *Blazina* as much as they do those sentenced after. All the inequities in opening these trapdoors for those who cannot easily pay, while those with means escape their dangers, arise with those sentenced before *Blazina*, as much as with those sentenced after. Admittedly, opening this exception will likely result in a surge of PRPs. Closing the exception, though, will likely consign many sentenced before *Blazina* to carry a growing debt that they realistically have no ability to pay, keeping them in the criminal justice system and within the gravity of temptations to reoffend that our system is designed to still.

By opening the door of RCW 10.73.100(6) to Dove and others in his position, we have a clear chance to help turn Lear's hard truths into antique lies. We should take the current while it serves. For these reasons, I dissent.

Bjorgen, C.J.

Bjorgen, C.J.

---

commence immediately. For this reason, I agree that the change in the ripeness doctrine is not material to Dove.